IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA L. MATTHEWS, R-15976 | ) | |
| Plaintiff, | ) | No. 16 C 11214 |
| | ) | |
| v. | ) | Honorable Sara L. Ellis |
| | ) | Judge Presiding |
| JOHN BALDWIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME defendants Victor Calloway, Sarah Johnson, John Baldwin, Nicholas Lamb, Randy Pfister, William Brown, Darrell Barry, Anthony Davis and Walter Nicholson, by and through their attorney LISA MADIGAN, Attorney General of the State of Illinois, and for their Answer to Plaintiff's First Amended Complaint state the following:

### NATURE OF THE ACTION

1. Stateville Correctional Center is a maximum security prison located in Crest Hill, Illinois, that houses offenders in IDOC custody and control ("Stateville"). Matthews was placed in Stateville on February 24, 2011 and was incarcerated in various prison cells in F-House, in suicide watch isolation, and in the X-Unit until he was transferred to Pontiac Correctional Center on June 7, 2017. At all relevant times, Matthews was in the care, custody, and control of Stateville.

**ANSWER:** Admit that Stateville is a maximum security prison within the Illinois Department of Corrections and that Plaintiff was housed in various locations throughout the institution from February, 2011 through June, 2017 and transferred to Pontiac, and deny the remaining allegations contained in the above paragraph.

2. Matthews was diagnosed in early 2015 as severely mentally ill, suffering from acute anxiety, manic depression, mood disorder, and suicidal thoughts. For periods throughout his IDOC incarceration at Stateville, Matthews repeatedly requested mental health treatment that was denied by the Defendants, each of whom was a prison official or mental health staff at IDOC. Despite his serious and potentially life-threatening diagnoses, Matthews' requests for mental health treatment were repeatedly ignored by the Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.

3. In April 2015, soon after he was diagnosed as severely mentally ill, Matthews attempted to take his own life. His suicide attempt caused him to injure his neck and back. Subsequently, even though Matthews made multiple complaints, his neck and back injuries were left untreated. Matthews was then transferred to isolated suicide watch, where he was not allowed to shower or have access to any basic hygiene products. Matthews developed rashes, sores, and skin lesions over the three months while on suicide watch. Matthews filed various grievances about these serious medical needs, each of which either went unanswered or was denied by the Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.

4. In addition, while housed in various cells in Stateville both during and after his stay in isolation, Matthews was repeatedly subjected to inhumane prison conditions. These horrific conditions included the following:

   a. black mold growing in the sink and toilet area;

   b. infestation of vermin including mice, roaches, and spiders;

   c. structural deterioration that included leaking sewage;

   d. restricted air circulation;

   e. unsanitary and tainted drinking water;

   f. raw sewage in flooding and pooling water; and

   g. extreme cold from missing window panes.

**ANSWER:** Deny

5. As a result of the inhumane prison conditions, Matthews suffered sores, rashes, skin lesions, bug bites, severe respiratory problems, a MRSA diagnosis, roaches burrowing into his ear canal, and a foot infection that developed after being left untreated which forced the removal of three of Matthews' toenails. Matthews complained about and timely requested treatment for each of these serious medical needs, but he was repeatedly ignored, denied, or injuriously delayed treatment by the Defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.

6. Matthews repeatedly sent letters to IDOC staff and filed numerous grievances with the Administrative Review Board about the inhumane prison conditions. Matthews also verbally informed Correctional Officers and Wardens he came into contact with at Stateville about the inhumane conditions. All of Matthews' complaints went ignored or unanswered.

**ANSWER:** Deny.

7. Matthews' claims were echoed in an independent report in October of 2016, which concluded that Stateville's F-House was inhumane and degrading to its prisoners. The described conditions included vermin infestation, poor ventilation, extreme temperatures, and structural deterioration beyond repair.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.

8. Shortly after this report, IDOC announced the closure of Stateville's F-House on December 1, 2016. Governor Rauner expressed that the decision to close F-House was appropriate because the cells were uninhabitable, hazardous, and promoted chaos.

**ANSWER:** Admit that F-House was closed. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.

9. Despite knowledge of the hazardous conditions at F-House, and while Matthews was on suicide watch, Defendants were deliberately indifferent to the inhumane conditions to which Matthews was exposed. Defendants ignored Matthews' repeated pleas to have his cell cleaned and exterminated, and failed to make reasonable efforts to remedy those conditions while Matthews was imprisoned at Stateville. Such indifference caused serious injuries to Matthews that were left untreated. The deliberate indifference on behalf of the Defendants left Matthews to suffer an inhumane and degrading existence, riddled with pain and suffering.

**ANSWER:** Deny.

10. The Eighth Amendment protects prisoners like Matthews against cruel and unusual punishment. Such protections extend to cover deliberate indifference to inhumane prison conditions and deliberate indifference to Matthews' serious medical needs.

**ANSWER:** The above is a statement of law and does not require a response. To the extent that a response is required, Denied.

11. In summary, Defendants' actions from April 2015 until June 2017 violated Matthews' constitutional rights and caused him harm. He files this complaint seeking damages for the harm caused.

**ANSWER:** Deny.

## PARTIES

12. Plaintiff Joshua Matthews is an individual citizen of the State of Illinois who has been incarcerated since February 24, 2011. He was incarcerated from February 2011 through June 7, 2017 at Stateville. He is currently housed at presently at Pontiac Correctional Center, another IDOC facility.

**ANSWER:** Admit that Plaintiff was housed in various locations throughout Stateville from February, 2011 through June, 2017 and that he is now at Pontiac. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.

13. Defendant IDOC is a government agency in charge of the administration of all Illinois state prisons. IDOC operates under color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that IDOC is a government agency and deny the remaining allegations contained in the above paragraph.

14. Defendant John Baldwin is the Director of the IDOC. Director Baldwin was in that position from in or around August 2015 through June 2017. Baldwin acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that John Baldwin was the acting Director of IDOC during the above time period and deny the remaining allegations in the above paragraph.

15. Defendant Nicholas Lamb is a Warden at Stateville. Warden Lamb was in that position from in or around April 2015 through June 2017. Lamb acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Deny that Nicholas Lamb was the Warden at Stateville during the above time period, further stating that he was the Assistant Warden of Operations from 1/7/14 to 12/31/15 and deny the remaining allegations in the above paragraph.

16. Defendant Randy Pfister is a Warden at Stateville. Warden Pfister was in that position from in or around November 2015 through June 2017. Pfister acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Randy Pfister was the Warden at Stateville during the above time period and deny the remaining allegations in the above paragraph.

17. Defendant Victor Calloway was the Warden of Programs at Stateville. Warden Calloway was in that position from in or about April 2015 through June 2017. Calloway acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Victor Calloway was an Assistant Warden of Programs at Stateville from 1/27/14 to 6/15/15 and deny the remaining allegations in the above paragraph.

18. Defendant Nicholson was the Warden of Programs at Stateville. Warden Nicholson was in that position from in or about April 2015 through June 2017. Nicholson acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Nicholson was the Assistant Warden of Programs at Stateville from 6/16/15 to 8/15/17 and deny the remaining allegations in the above paragraph.

19. Defendant Jill Parrish is a Grievance Officer at Stateville. Grievance Officer Parrish was in that position from in or around April 2015 through June 2017. Parrish acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Jill Parrish was a Grievance Officer at Stateville and retired from IDOC on 12/31/2015 and deny the remaining allegations in the above paragraph.

4

20.     Defendant Sarah Johnson is an ARB Officer at Stateville. ARB Officer Johnson was in that position from in or around April 2015 through June 2017. Johnson acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:**     Admit that Sarah Johnson was an ARB Officer at IDOC during the above time period and deny the remaining allegations in the above paragraph.

21.     Defendant Lieutenant William Brown is a Correctional Officer at Stateville. Lt. Brown was in that position from in or around April 2015 through June 2017. Lt. Brown acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:**     Admit that William Brown was a Correctional Lieutenant at Stateville during the above time period and deny the remaining allegations in the above paragraph.

22.     Defendant Major Nina Watts is a Correctional Lieutenant at Stateville. Maj. Watts was in that position from in or around April 2015 through June 2017. Maj. Watts acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:**     Admit that Nina Watts was a Correctional Lieutenant at Stateville until 8/15/16 and was promoted to Major on 8/16/16 and deny the remaining allegations in the above paragraph.

23.     Defendant Dr. Bridgette Lanktree is a psychologist working at Stateville. Dr. Lanktree was in that position from in or around April 2015 through June 2017. Dr. Lanktree acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:**     Admit that Bridget Lanktree was a psychologist at Stateville until 8/3/15 and deny the remaining allegations in the above paragraph.

24.     Defendant Dr. Catherine Larry is a psychologist working at Stateville. Dr. Larry was in that position from in or around April 2015 through June 2017. Dr. Larry acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:**     Admit that Dr. Catherine Larry was a psychologist at Stateville, employed by Wexford Health Sources, Inc. until 10/16/16 and deny the remaining allegations in the above paragraph.

25.     Defendant Dr. Mirsky is a psychologist working at Stateville. Dr. Mirsky was in that position from in or around April 2015 through June 2017. Dr. Mirsky acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:**     Admit that Dr. Mirsky was a psychologist at Stateville from 1/19/16 through the present and deny the remaining allegations in the above paragraph.

26.     Defendant Dr. Saleh Obaisi is a Medical Director working at Stateville. Dr. Obaisi was in that position from in or around April 2015 through June 2017. Dr. Obaisi acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Dr. Saleh Obaisi was the Medical Director at Stateville during the above time period and deny the remaining allegations in the above paragraph.

27. Defendant Kelly McCasklind is a nurse working at Stateville. Nurse McCasklind was in that position from in or around April 2015 through June 2017. Nurse McCasklind acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Kelly McCastland was employed by Wexford Health Sources, Inc. from May, 2016 to the present and deny the remaining allegations in the above paragraph.

28. Defendant Sara Cheshareck is a mental health professional working at Stateville. Cheshareck was in that position from in or around April 2015 through June 2017. Cheshareck acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Sara Cheshareck was employed by Wexford Health Sources, Inc. as a mental health professional at Stateville until 12/2016 and deny the remaining allegations in the above paragraph.

29. Defendant Major Sawyer is a Correctional Officer at Stateville. Maj. Sawyer was in that position from in or around April 2015 through June 2017. Maj. Sawyer acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Major Sawyer was a Correctional Major at Stateville during the above time period and deny the remaining allegations in the above paragraph.

30. Defendant Lieutenant A. Davis is a Correctional Officer at Stateville. Lt. Davis was in that position from in or around April 2015 through June 2017. Lt. Davis acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that A. Davis was a Correctional Lieutenant at Stateville during the above time period and deny the remaining allegations in the above paragraph.

31. Defendant Lieutenant Barry is a Correctional Officer at Stateville. Lt. Barry was in that position from in or around July 2015 through June 2017. Lt. Barry acted under the color of state law at all times relevant to this First Amended Complaint.

**ANSWER:** Admit that Lieutenant Barry was a Correctional Lieutenant at Stateville until 6/16/17 when he was promoted to Major and deny the remaining allegations in the above paragraph.

## JURISDICTION

32. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as a matter arising under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution, and under 28 U.S.C. § 1343 as a civil action authorized by law to redress the deprivation of Matthews' rights under color of state law.

**ANSWER:** Admit that this Court has jurisdiction.

33. Upon information and belief, Matthews exhausted all administrative remedies available to him at Stateville prior to bringing this 42 U.S.C. § 1983 civil rights lawsuit within the meaning of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).

**ANSWER:** Deny.

34. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts giving rise to Matthews' claims occurred at Stateville in Will County, which is located in the Northern District of Illinois.

**ANSWER:** Admit that venue is proper.

## FACTUAL BACKGROUND

35. Matthews was first incarcerated at Stateville on February 24, 2011. After a three month stay on suicide watch from April to July 2015, Matthews was transferred and imprisoned in various cells in F-House. Matthews remained in F-House from July 6, 2015 until November 30, 2016. Matthews was then moved to the X-Unit because F-House was permanently shut down. Matthews remained in the X-Unit from November 30, 2016 until June 7, 2017, when he was transferred to Pontiac Correctional Center.

**ANSWER:** Admit that Plaintiff was housed in various locations throughout Stateville from February, 2011 through June, 2017 and transferred to Pontiac, and deny the remaining allegations contained in the above paragraph.

36. Beginning no later than February 2015, Matthews began experiencing elevated and severe levels of acute anxiety, fear, paranoia, and depression. He was diagnosed as severely mentally ill at that time, and attempted suicide. Matthews was placed on suicide watch at Stateville in late April 2015, and was not released from isolation until July 6, 2015, where his condition deteriorated. Matthews did not receive any mental health treatment while on isolated suicide watch.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

37. Because Matthews was not being treated for his severely mentally ill diagnosis, Matthews filed an Offender's Emergency Grievance on July 6, 2015. Matthews requested mental health treatment, stating he had been suffering from acute anxiety, fear, paranoia, and depression, and had been living with an untreated diagnosis of severe mental illness for the past three months. Matthews wrote that the level of anxiety and depression was crippling and debilitating, and the mental health professionals he saw during routine visits ignored his requests to provide medical treatment. Warden Nicholas Lamb returned the grievance a couple of weeks later, noting that the grievance was not an emergency. Matthews' grievance was forwarded to IDOC's Health Care Unit Administrator, who responded on IDOC letterhead that the grievance was reviewed properly and that it should be forwarded to the health department because it was a mental health issue. Matthews was not provided a response by any mental health professionals regarding this grievance.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

38. A couple of days later on July 9, 2015, Matthews filed an Offender's Grievance, stating that he suffered from chronic severe pain as a result of the various injuries incurred while on suicide watch. These injuries included neck and back pain, plus extensive rashes and skin lesions due to the mental health professionals and Correctional Officers' refusal to let Matthews shower while on isolated suicide watch. Matthews detailed that he was also suffering from respiratory problems due to the restricted air circulation and excessive mold in his prison cell.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

39. Matthews also wrote in the July 9 Grievance that Medical Director Dr. Obaisi repeatedly refused to treat his injuries suffered while on suicide watch, even after filing grievances requesting treatment. Matthews requested treatment for his injuries, and a cleaned prison cell. The Grievance was returned as an unsubstantiated emergency grievance by Warden Nicholas Lamb, even though Matthews did not mark the grievance as an emergency.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

40. In a second July 9, 2015 Grievance, Matthews requested an examination by Dr. Obaisi for injuries suffered while on suicide watch. ARB Officer Sarah Johnson returned the grievance over six months later, claiming it was not filed within the proper timeframe. Johnson incorrectly returned Matthews' grievance as untimely, and by waiting six months to provide an answer to Matthews, Johnson created a delay in the grievance process. Matthews was subsequently not examined by Dr. Obaisi for injuries suffered attempting to take his own life.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

41. Matthews filed another Offender's Emergency Grievance on July 15, 2015, in which he detailed the complete failure of any medical professionals to treat his serious medical needs despite his repeated requests. Specifically, Matthews wrote that Dr. Lanktree and Dr. Larry repeatedly ignored his requests for mental health treatment throughout the past month during routine visits. He also reported that Warden of Programs Calloway also repeatedly ignored his requests for mental health treatment throughout the past month. This failure to treat Matthews' serious medical needs led to another suicide attempt in June 2015, causing him chronic neck, back and spine pain. Matthews wrote in his grievance that after this second suicide attempt, Dr. Obaisi continued to ignore him, as did mental health professional Sara Cheshareck.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

42. In addition to writing about his serious medical needs going untreated in the grievance filed July 15, 2015, Matthews detailed the deplorable prison conditions in his cell unit while on suicide watch that contributed to his declining mental and physical health. Matthews stated his cell was unfit for human habitation due to the spread of mold, infestation of mice,

8

roaches, and spiders, unsanitary drinking water from his sink, unsanitary leakage from the ceiling and walls, and unsanitary flooding and pooling of water in his cell through which he was forced to walk barefoot. He requested that his cell be cleaned and the vermin exterminated.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

43. Matthews additionally complained in the July 15, 2015 Emergency Grievance about fecal matter plastered to the door and the "chuckhole" in the door, the opening through which he received his meals. Further, he was only provided a smock to wear, and his bed had no mattress, so he was left to sleep almost naked on a steel bed frame.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

44. Warden Nicholas Lamb marked the July 15, 2015 Grievance as an unsubstantiated emergency grievance. Matthews' grievance was then stamped as received by the ARB in February of 2016 (7 months later), but no additional response was provided regarding cleaning his cell. Further, all medical professionals that were made aware of Matthews' life-threatening mental illness, both through this Grievance and through his repeated pleas made during routine visits, refused to provide any requested mental health treatment.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

45. Because the Defendants deliberately ignored Matthews' pleas and grievances, he wrote a letter directly to Director John Baldwin, complaining that he was not receiving adequate medical treatment for his mental illness and injuries suffered while imprisoned at Stateville. Matthews requested to be transferred to a different prison to enroll in a mental health treatment program. Director Baldwin did not respond to Matthews' complaints.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

46. Matthews remained in his suicide watch cell unit from late April 2015 until July 6, 2015, and was forced to live in inhumane and unsanitary conditions, which only heightened his already severe and untreated mental illness.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

47. Because of the Defendants' failures in administering the grievance process, Matthews spoke to Maj. Sawyer, Lt. Davis, and Lt. Barry on several occasions. At those times, he stressed to each of these three Corrections Officers his severe mental health needs, and his desire for mental health treatment. These Correctional Officers were also aware of Matthews' mental health condition because of Matthews' suicide attempts. All of the Correctional Officers failed to take any action and refused to escalate Matthews' complaints to the Warden, as Matthews had requested.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

48.   On August 27, 2015, Matthews received a Grievance Officer's Report, the only one received during his time at Stateville, from Grievance Officer Jill Parrish. Parrish noted that Matthews had complained of being denied proper medical treatment, but she recommended no action after reviewing his medical records. Her report did not mention Matthews' diagnosis as severely mentally ill, nor did it mention any of the numerous grievances he had filed requesting mental health treatment, which were denied by other health care professionals, ARB Officer Johnson, and Grievance Officer Parrish.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

49.   On September 23, 2015, Matthews filed an Offender's Emergency Grievance detailing a medical procedure he had performed by Dr. Obaisi. Matthews wrote that the skin under his toenails has been rotting away and corroding over time due to the horrific living conditions in his cell while on suicide watch. Having to walk through unsanitary fecal water that flooded his cell, in addition to being refused access to a shower, caused several of Matthews' toenails to become infected. Dr. Obaisi had to surgically remove three toenails because of this infection. The failure to cure Matthews' inhumane living conditions, which he complained about in previous grievances on July 9 and July 15, led to the infection and subsequent removal of his three infected toenails described in this September 23, 2015 Grievance.

**ANSWER:**   Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

50.   Warden Nicholas Lamb returned the September 23, 2015 Grievance as an unsubstantiated emergency. Sarah Johnson returned Matthews' grievance four months later, claiming it was not filed within the proper timeframe. Johnson incorrectly returned Matthews' grievance as untimely for a second time, and by waiting four months to provide an answer to Matthews, Johnson created the delay in the grievance process.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

51.   After Matthews was moved out of isolated suicide watch, he notified the Grievance Officer of the inhumane conditions that continued in his F-House cells. Matthews also verbally informed Warden of Programs Nicholson about his inhumane prison conditions, but to no avail. Correctional Officers Lt. Brown and Maj. Watts observed for themselves the infestation, mold, flooding, and other horrific conditions Matthews experienced on a daily basis at F-House. Neither of the Correctional Officers took any action to transfer Matthews or escalate his complaints to their superiors. In fact, both Correctional Officers told Matthews that the conditions are simply how all the cells were in F-House.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

52. Matthews filed an Emergency Grievance on May 13, 2016, where he stated that his F-House cell was extremely cold, causing numbness to his extremities. This was due to the broken windows that did not close and were missing window panes. Matthews requested a window pane because there was no insulation in his cell. Warden Nicholas Lamb returned the grievance as an unsubstantiated emergency, and Matthews' pleas again went unanswered.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

53. From August 1, 2016 until November 11, 2016, proximate to the time Matthews was finally moved out of F-House, he filed numerous grievances about his uninhabitable prison conditions, all of which went unanswered. In total, Matthews filed approximately eight grievances during this time period, requesting to have his cell cleaned, exterminated, and brought up to code. The IDOC officers and medical health professionals did not take any action to clean Matthews' cell.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

54. The atrocious prison conditions Matthews detailed throughout these grievances included freezing temperatures because there were no window panes, leakage from the ceiling and walls, black mold, spiders, roaches, mice, paint chips falling into his water and food, and unsanitary drinking water.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

55. For example, on November 7, 2016, Matthews detailed in an Emergency Grievance that he had consistently and repeatedly complained to Lieutenant Brown and Major Watts about his horrible and inhumane prison conditions. Matthews complained of the mold and paint chips, which made him feel as if he had "hot pepper" in his throat. Matthews detailed the excessive cold due to the missing window panes, mice infesting his cell, and his experience fighting to keep roaches off of his body, including out of his ears. Again, Matthews requested his cell be cleaned and exterminated.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

56. Warden Pfister returned the November 7, 2016 Grievance as an unsubstantiated emergency (as he did with six other grievances Matthews filed during this three and a half month stretch). Officer Sarah Johnson requested additional copies and returned the grievance unanswered.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

57. A particularly horrific and injurious experience for Matthews involved roaches burrowing into his ear canal. On November 3, 2016, Matthews filed an Offender's Emergency Grievance detailing how he was awoken from a deep sleep by roaches crawling all over his body

11

and face. He placed a sick call request as soon as he could, and was seen by medical staff, who removed a roach from his left ear. Additional nurses had to be called to remove two more roaches from his right ear. Matthews had to have his ears flushed following the incident. He had another roach that crawled into his ear canal the following week, which was again removed. Matthews was prescribed ear drops for a time. He described the pain as unbearable.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

58. In addition to roaches burrowing into Matthews' ear, the following week he was scratched and bit by a mouse in his cell, which he complained of in an Offender's Emergency Grievance filed November 11, 2016. After placing a sick call request, Nurse McCasklind refused to treat his injuries, which included skin lesions, bleeding, and bruising. The Nurse's refusal to treat him was witnessed by various unnamed security staff present.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

59. Matthews stated in this November 11, 2016 Grievance that the inhumane prison conditions he had experienced for over a year had greatly exacerbated his anxiety and depression. Matthews again did not receive any mental health treatment or medical treatment for his injuries following this grievance.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

60. After complaining of the prison conditions for the past year and a half, Matthews was finally transferred to the X-Unit on November 30, 2016. In fact, Matthews was transferred to a new unit because F-House was permanently shut down after receiving numerous complaints and negative reports about its conditions.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

61. For example, the John Howard Association of Illinois, an independent organization that monitors correctional facilities throughout the state, reported on October 14, 2016 that conditions in F-House were "unsanitary, inhumane, and degrading for prisoners," and such conditions included "extreme temperatures and poor ventilation; infestations of cockroaches and other pests; poor sanitation including issues with toilets, plumbing, and showers; and a physical plant that is overall dilapidated and beyond repair."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

62. On December 1, 2016, John Baldwin, then-acting director for the IDOC, announced that the F-House at Stateville was officially closed. On information and belief, the F-House was deemed uninhabitable and closed for hazardous and inhumane prison conditions. Governor Rauner opined in the Chicago Sun Times on October 14, 2016 that F-House was the

state's oldest and most costly prison housing unit, and the rounded structure of the unit promoted hazards and a chaotic environment for staff and offenders.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

63. Unfortunately for Matthews, the prison conditions and lack of medical treatment did not improve in Stateville's X-Unit. On November 30, 2016, Matthews filed an Offender's Emergency Grievance stating his cell in the X-Unit was overrun with spiders that were coming out of vents in the walls. Matthews requested extermination, but no action was taken. His grievance was returned unanswered in mid-January 2017 by Officer Sarah Johnson, requesting a copy of the grievance.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

64. Matthews filed another unanswered Offender's Emergency Grievance on December 3, 2016, complaining of mold all over the bars in his cell. Matthews requested that his cell be washed. Officer Sarah Johnson requested a copy of the grievance and took no further action in response to Matthews' complaint.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

65. On December 5, 2016, Matthews filed an Offender's Grievance detailing how he was bit by a spider due to the infestation of spiders in his cell. Matthews filed a second grievance that same day, detailing how Nurse McCasklind refused to treat his injuries sustained from the spider bite on his toe on his left foot. The spider bite caused severe swelling, which Matthews requested be treated by Nurse McCasklind or another health professional. Matthews followed up with two additional grievances on December 6 and December 14, 2016, recounting Nurse McCasklind's failure to treat his spider bite and requesting medical treatment for the toe injury that Nurse McCasklind refused to provide.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

66. Because Matthews' injuries were not examined or properly treated, he was diagnosed on December 16, 2016 with MRSA on one of his toes of his left foot—the same foot and toe bit by the spiders earlier in December. After a different nurse finally examined Matthews' foot and took a culture of the infected toe, the MRSA diagnosis was made, and Matthews was provided much needed, though delayed, medical treatment. If Nurse McCasklind had examined and properly treated Matthews when he initially complained to her several weeks before, Matthews could have avoided this serious infection.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

67. On April 22, 2017, Matthews filed another Offender's Grievance relating to the inhumane prison conditions and denial of medical care, detailing how Warden Pfister and Dr.

13

Mirsky repeatedly ignored his requests for mental health treatment. This grievance went unanswered.

**ANSWER:** Admit that Plaintiff filed a grievance, but Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

**COUNT I – DELIBERATE INDIFFERENCE TO HAZARDOUS PRISON CONDITIONS**
**(Warden Nicholas Lamb, Warden Randy Pfister, Director John Baldwin, Warden of Programs Nicholson, Administrative Review Board Officer Sarah Johnson, Lieutenant William Brown, Major Nina Watts)**

68. Matthews realleges and incorporates herein by reference the foregoing Paragraphs 1 to 67 of the First Amended Complaint as if stated fully herein.

**ANSWER:** Defendants restate their answers to paragraphs 1 to 67 as if set fully herein.

69. The Eighth Amendment to the United States Constitution protects individuals from cruel and unusual punishment. These protections apply equally to the states and all divisions and entities, including departments of corrections, prison facilities, prison staff, and Correctional Officers acting under the color of state law.

**ANSWER:** The above is a statement of law and does not require a response. To the extent that a response is required, Denied.

70. At all relevant times, named Defendants acted under color of state law.

**ANSWER:** Admit.

71. As alleged above, the hazardous conditions Matthews experienced while imprisoned at Stateville, at F-House, on suicide watch, and while in the X-Unit, subjected Matthews to a serious deprivation of basic human needs. The conditions Matthews was exposed to, and named Defendants failed to cure, included the following:

    a. black mold growing in the sink and toilet area;

    b. infestation of vermin including mice, roaches, and spiders;

    c. structural deterioration that included leaking sewage;

    d. restricted air circulation;

    e. unsanitary and tainted drinking water;

    f. raw sewage in flooding and pooling water; and

    g. extreme cold from missing window panes.

**ANSWER:** Deny.

72. These inhumane conditions amount to cruel and unusual punishment, violating Matthews' rights to decency and denying him of basic human needs. The inhumane prison conditions were demonstrated through the IDOC's decision to shut down the F-House, though not until after Matthews had already suffered through a year and a half of living in those cells.

**ANSWER:** Deny.

73. The inhumane prison conditions caused serious injuries to Matthews, including but not limited to the removal of several roaches that burrowed into Matthews' ear canal, causing him extreme pain and discomfort. Had prison officials responded to Matthews' numerous grievances and pleas, those serious injuries could have been prevented.

**ANSWER:** Deny.

74. Additionally, the inhumane conditions resulted in painful rashes, back pain, skin lesions, sleep deprivation, numbness of the extremities, and debilitating anxiety and depression.

**ANSWER:** Deny.

75. Despite having knowledge of the hazardous conditions that threatened Matthews' health and safety, named Defendants disregarded the risks, taking no action to try and address his numerous complaints and pleas for assistance.

**ANSWER:** Deny.

76. Therefore, Defendants have acted with deliberate indifference toward hazardous prison conditions in violation of the Eighth Amendment. Defendants' actions have deprived Matthews of his right to be free from cruel and unusual punishment.

**ANSWER:** Deny.

### PRAYER FOR RELIEF

WHEREFORE, Matthews prays for judgment as follows:

a. For a declaration that named Defendants, individually and collectively, have violated Matthews' rights under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983;

b. For an award of compensatory and punitive damages in Matthews' favor against all Defendants in an amount sufficient to compensate him for the physical pain and mental anguish suffered by him due to the deliberate indifference and intentional misconduct of the Defendants, but in no event less than an amount to be determined at trial;

c. For costs, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

d. For such other and further legal, equitable and other relief as this Court deems just and proper.

**ANSWER:** Denied, further stating that Plaintiff is entitled to no damages whatsoever.

**COUNT II – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**(Warden Nicholas Lamb, Psychologist Dr. Bridgette Lanktree, Psychologist Dr. Catherine Larry, Psychologist Dr. Mirsky, Medical Director Saleh Obaisi, Nurse Kelly McCasklind, Mental Health Professional Sara Cheshareck, Grievance Officer Jill Parrish, Administrative Review Board Officer Sarah Johnson, Warden of Programs Victor Calloway, Major Sawyer, Lieutenant A. Davis, Lieutenant Barry)**

77. Matthews realleges and incorporates herein by reference the foregoing Paragraphs 1 to 76 of the First Amended Complaint as if stated fully herein.

**ANSWER:** Defendants restate their answers to paragraphs 1 to 76 as if set fully herein.

78. The Eighth Amendment to the United States Constitution protects individuals from cruel and unusual punishment. These protections apply equally to the states and all divisions and entities, including departments of corrections, prison facilities, prison staff, and Correctional Officers acting under the color of state law.

**ANSWER:** The above is a statement of law and does not require a response. To the extent that a response is required, Denied.

79. At all relevant times, named Defendants acted under color of state law.

**ANSWER:** Admit.

80. Matthews' diagnosis as seriously mentally ill, suffering from acute anxiety, manic depression, mood disorder, and suicidal thoughts that were acted upon, constitutes a serious medical need.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

81. Matthews' injuries suffered while imprisoned at Stateville, including neck and back pain, as well as rashes, sores, and skin lesions, constitute serious medical needs.

**ANSWER:** Deny.

82. Matthews' injuries suffered while imprisoned in inhumane conditions constitute serious medical needs, including an infected foot that led to a MRSA diagnosis, the infected toenails that had to be removed, respiratory problems suffered as a result of the mold and restricted air flow, and numerous bug bites that caused rashes and bleeding.

**ANSWER:** Deny.

83. Named Defendants were made aware that Matthews suffers from these mental and physical health conditions through various grievances, and in fact were among the medical professionals that diagnosed Matthews as seriously mentally ill.

**ANSWER:** Deny.

84. These actions by Matthews are sufficient to place named Defendants on notice of his objectively serious medical needs.

**ANSWER:** Deny.

85. Despite Matthews' request for medical treatment, Defendants refused to provide access to adequate mental health treatment, thus knowingly disregarding serious risks to Matthews' health and well-being.

**ANSWER:** Deny.

86. Defendants failed to treat injuries Matthews suffered as a result of attempting to take his own life on multiple occasions, including refusal to treat his neck and back pain.

**ANSWER:** Deny.

87. Defendants failed to treat the injuries Matthews suffered while living in his dangerous prison cells. Defendants thus knowingly disregarded excessive risks to Matthews' health and well-being.

**ANSWER:** Deny.

88. Defendants' conduct and failure to act constituted deliberate indifference to Matthews' serious medical needs in violation of his Eighth Amendment rights.

**ANSWER:** Deny.

## PRAYER FOR RELIEF

WHEREFORE, Matthews prays for judgment as follows:

a. For a declaration that named Defendants, individually and collectively, have violated Matthews' rights under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983;

b. For an award of compensatory and punitive damages in Matthews' favor against all Defendants in an amount sufficient to compensate him for the physical pain and mental anguish suffered by him due to the deliberate indifference and intentional misconduct of the Defendants, but in no event less than an amount to be determined at trial;

c. For costs, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

d. For such other and further legal, equitable and other relief as this Court deems just and proper.

**ANSWER:** Denied, further stating that Plaintiff is entitled to no damages whatsoever.

**COUNT III – PATTERN AND PRACTICE OF DELIBERATE INDIFFERENCE TO**

17

## HAZARDOUS PRISON CONDITIONS
### (Illinois Department of Corrections)

89. Matthews realleges and incorporates herein by reference the foregoing Paragraphs 1 to 88 of the First Amended Complaint as if stated fully herein.

**ANSWER:** Defendants restate their answers to paragraphs 1 to 88 as if restated herein.

90. During Matthews' incarceration at Stateville, primarily in the rounded structure of F-House, he had the occasion to observe multiple cells. Matthews observed similar inhumane conditions in neighboring cells at Stateville. These conditions included mold, vermin, structural damage, and leakage.

**ANSWER:** Deny.

91. Matthews was also moved across multiple cells in F-House during his time at Stateville, experiencing these inhumane conditions in all cells he inhabited.

**ANSWER:** Deny.

92. When Matthews complained about his cell conditions to Correctional Officers Lieutenant Brown and Major Watts, the Officers told Matthews that all cell conditions in F-House were the same.

**ANSWER:** Deny.

93. Various other prisoners at Stateville over the past several years have been subjected to the same conditions as Matthews. These prisoners have complained to prison officials about the inhumane conditions, but their requests were ignored, and IDOC failed to correct or improve the state of the cells.

**ANSWER:** Deny.

94. The John Howard Association of Illinois, an independent organization that monitors correctional facilities throughout the state, reported that conditions in F-House were "unsanitary, inhumane, and degrading for prisoners," detailing many of the same inhumane conditions that Matthews and others have complained about to the IDOC.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the above paragraph.

95. In December of 2016, it was announced that F-House had to be closed down because it was uninhabitable and hazardous to its prisoners. F-House was the state's oldest and most costly prison housing unit, and the rounded structure of the unit was found to promote a hazardous and chaotic environment.

**ANSWER:** Defendants admit that F-House was closed but deny the remaining allegations contained in the above paragraph.

96. These allegations reflect the general pattern and practice of IDOC's repeated deliberate indifference to the inhumane prison conditions that existed at Stateville's F-House. IDOC failed to take steps to ensure Matthews' and others' constitutional rights to basic human needs were met.

**ANSWER:** Deny.

97. IDOC has denied Stateville's F-House prisoners access to basic human needs through its inhumane prison conditions, and knowingly disregarded the risks to these prisoners' health and well-being by, among other things, refusing to take corrective measures and allowing and condoning the actions of the prison officials in disregarding the prisoners' complaints.

**ANSWER:** Deny.

98. IDOC's actions, or lack thereof, are in contravention of the policies and procedures in place at Stateville. Alternatively, IDOC has failed to institute proper policies and procedures at Stateville to ensure prisoners are free from living with inhumane prison conditions.

**ANSWER:** Deny.

## PRAYER FOR RELIEF

WHEREFORE, Matthews prays for judgment as follows:

a. For a declaration that IDOC has violated Matthews' rights under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983;

b. For an award of compensatory and punitive damages in Matthews' favor against IDOC in an amount sufficient to compensate him for the physical pain and mental anguish suffered by him due to the pattern and practice of deliberate indifference to the inhuman prison conditions, but in no event less than an amount to be determined at trial;

c. For costs, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

d. For such other and further legal, equitable and other relief as this Court deems just and proper.

**ANSWER:** Denied, further stating that Plaintiff is entitled to no damages whatsoever.

## GENERAL DENIAL

Defendants deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

19

At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

## Second Affirmative Defense

Defendants' personal involvement has not been established with sufficient specificity to state a claim upon which relief can be granted.

## Third Affirmative Defense

Plaintiff's claims for injunctive relief are barred by the class action case currently pending in the United States District Court for the Northern District of Illinois entitled *Dobbey v. Weilding*, 13 CV 1068, as the Plaintiff may not opt out of the injunctive relief sought in that case.

## Fourth Affirmative Defense

Plaintiff has not exhausted available remedies as required by 42 U.S.C. Section 1997(e), therefore his complaint should be dismissed.

## JURY DEMAND

Defendants demand a trial by jury on all issues herein triable.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois      By:   s/James P. Doran
                                        JAMES P. DORAN
                                        Assistant Attorney General
                                        General Law Bureau
                                        100 W. Randolph St., 13th Fl.
                                        Chicago, Illinois 60601
                                        (312) 814-7202
                                        Jdoran@atg.state.il.us