# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSHUA LEE MATTHEWS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NICHOLAS LAMB, RANDY PFISTER, ) <br> JOHN BALDWIN, VICTOR CALLOWAY, ) <br> WALTER NICHOLSON, JILL PARRISH, ) <br> SARAH JOHNSON, WILLIAM BROWN, ) <br> NINA WATTS, BRIDGETTE LANKTREE, ) <br> CATHERINE LARRY, INNA MIRSKY, ) <br> the ESTATE of SALEH OBAISI, KELLY ) <br> MCCASKLIND, SARA CHESHARECK, ) <br> MAJOR SAWYER, ANTHONY DAVIS, ) <br> and DARRELL BARRY. ) <br> ) <br> Defendants. ) | No. 16 C 11214 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Joshua Lee Matthews, a prisoner formerly confined at the Stateville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that, during his time at Stateville, between February 24, 2011 and June 7, 2017, he suffered unconstitutional and inhumane prison conditions, and did not receive treatment for serious medical needs. In his first amended complaint, Matthews names a number of Stateville wardens, correctional officers, and doctors as Defendants including: Nicholas Lamb, a former Stateville warden; Randy Pfister, a former Stateville warden; and Sarah Johnson, a Stateville administrative review board ("ARB") officer. Matthews also names John Baldwin, a former Illinois Department of Corrections director as a Defendant. Defendants Baldwin, Johnson, Lamb, and Pfister (collectively, the "Moving Defendants") now move for judgment on the pleadings on Matthews' two deliberate indifference counts: deliberate indifference to hazardous prison conditions (Count I) against

Baldwin, Johnson, Lamb, and Pfister; and deliberate indifference to serious medical needs against Lamb and Johnson (Count II). Because Matthews has properly pleaded deliberate indifference against the Moving Defendants and is not improperly relying on a theory of *respondeat superior* or making a claim against the prison's grievance process, the Court denies the Moving Defendants' motion.

## BACKGROUND[1]

Matthews began his incarceration in Stateville on February 24, 2011, serving time in various prison cells in F-House, in suicide watch isolation, and in the X-Unit until he moved to Pontiac Correctional Center on June 7, 2017. In early 2015, Matthews received a diagnosis that he was severely mentally ill, suffering from acute anxiety, manic depression, mood disorder, and suicidal thoughts. He repeatedly requested mental health treatment, and Defendants repeatedly denied his requests.

In April 2015, Matthews attempted suicide, injuring his neck and back. Despite his requests, none of the Defendants treated his injuries. Defendants transferred Matthews to isolated suicide watch, where they did not allow him to shower or give him access to any basic hygiene products. Matthews developed rashes, sores, and skin lesions over his three months on suicide watch. He filed various grievances, complaining of his injuries, the vermin infestations, poor ventilation, extreme temperatures, mold, and structural deterioration, each of which the Defendants either left unanswered or denied.

Specifically, Matthews filed a grievance on July 9, 2015, that detailed the chronic pain he suffered as a result of the various injuries he incurred while on suicide watch, including neck and back pain, extensive rashes and skin lesions, and respiratory problems due to the restricted air

---

[1] In resolving the Moving Defendants' motion for judgment on the pleadings, the Court considers Matthews' complaint and the Moving Defendants' answer in the light most favorable to Matthews. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

circulation and excessive mold in his prison cell. Lamb returned this grievance as an unsubstantiated emergency grievance.

Matthews filed a second grievance on July 9, requesting a medical examination for his injuries, which Johnson returned over six months later, claiming that Matthews did not file it within the proper timeframe.

Matthews filed an emergency grievance on July 15, detailing the lack of medical attention or treatment, and the state of his cell, which had mold, mice, roaches, spiders, unsanitary drinking water, unsanitary leakage from the ceiling and walls, unsanitary flooding and pooling of water, and fecal matter smeared against the door through which he received his meals. Lamb marked the grievance as an unsubstantiated emergency grievance.

Matthews then wrote a letter to Baldwin, complaining that he was not receiving adequate medical treatment for his mental illness and injuries. Baldwin did not respond.

Matthews filed another emergency grievance on September 23, detailing the rot and corrosion that had affected his foot while his previous grievances went unanswered. Eventually, Matthews needed three of his toenails surgically removed because of his infection. Lamb returned this grievance as an unsubstantiated emergency. Johnson returned this grievance four months later claiming Matthews did not file it within the proper timeframe.

Matthews filed another emergency grievance on May 13, 2016, complaining of extreme cold in his cell due to missing and broken window panes, which caused numbness in his extremities. Lamb returned the grievance as an unsubstantiated emergency grievance.

Matthews filed another emergency grievance on November 7, detailing the mold and paint chips in his cell that made him feel as if he had hot pepper in his throat, as well as the

excessive cold, mice, and roaches. Pfister returned the grievance as an unsubstantiated emergency. Johnson requested additional copies and returned the grievance unanswered.

The officials at Stateville transferred Matthews out of F-House to the X-Unit on November 30, 2016. Matthews filed another emergency grievance that day, stating that his cell was overrun with spiders that were coming out of vents in the walls. Johnson requested a copy and returned the grievance unanswered.

Matthews filed another emergency grievance on December 3, complaining of mold covering the bars in his cell. Johnson again requested a copy and took no further action.

On December 1, Baldwin officially closed the F-House at Stateville. The John Howard Association of Illinois had reported on October 14, before the closure, that the conditions in F-House were "unsanitary, inhumane, and degrading for prisoners," and such conditions included "extreme temperatures and poor ventilation; infestations of cockroaches and other pests; poor sanitation including issues with toilets, plumbing, and showers; and a physical plant that is overall dilapidated and beyond repair." Doc. 35 ¶ 61.

## LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule

12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The Moving Defendants now request judgment on the pleadings in their favor, arguing that Matthews' deliberate indifference claims are merely objections to denied grievances and the grievance process, or improperly based on a theory of *respondeat superior* because the Moving Defendants did not personally cause the alleged unconstitutional conditions or deny medical attention. However, the Moving Defendants mischaracterize Matthews' claims.

**I.  Matthews' Grievances**

The Moving Defendants first argue that Matthews simply claims that they failed to respond, or failed to respond favorably, to his grievances, which is not a cognizable claim. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir. 1996) ([A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Although Matthews' first amended complaint details the grievances he filed while at Stateville and their denials, Matthews does not complain in any allegation that the grievance process is flawed. In fact, he explicitly disclaims this theory. Doc. 85 at 7 ("Matthews is not challenging the Stateville grievance process."). Rather, the mention of each grievance serves a functional purpose: to detail the basis for Matthews' claim that his conditions of confinement were unconstitutional or that he needed medical attention and that the Defendants knew of his

conditions and needs. *See Johnson v. Ill. Dep't of Corr.*, No. 15-cv-5715, 2015 WL 7889033, at *2 (N.D. Ill. Dec. 3, 2015) ("Ignoring grievances does not state a claim under § 1983; but, a prison official can be liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance procedure." (quotation omitted)); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (finding an inmate's letters to prison administrators may establish a basis for § 1983 liability). The Moving Defendants do not challenge the allegations of underlying constitutional violations as insufficient, and the Court previously found that they suffice. Doc. 5 at 4.

## II. Defendants' Involvement

What the Moving Defendants do challenge is their personal involvement. They claim no personal involvement, and that any theory of liability would therefore be based improperly on a theory of *respondeat superior*. *See Monell v. Dep't of So. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding that a theory of liability based in *respondeat superior* is improper for liability under § 1983). Matthews contends, however, that the denied grievances show each Defendant's personal involvement and that his claim is not based on a theory of *respondeat superior*. The Court therefore turns to whether Matthews has sufficiently pleaded each Defendant's involvement.

### A. Deliberate Indifference to Unconstitutional Conditions of Confinement

Because Matthews named Lamb and Johnson in the initial complaint, the Court analyzed this question as to these two defendants and found that Matthews properly pleaded a claim of deliberate indifference to unconstitutional conditions of confinement as to Lamb and Johnson. *See* Doc. 5 at 4. As part of that finding, the Court found that Matthews has properly alleged unconstitutional conditions of confinement and Lamb and Johnson's knowledge of them. *Id.*

The Court thus turns to whether Matthews has adequately alleged that Pfister and Baldwin knew of these conditions but failed to take reasonable steps to resolve them. *See Farmer v. Brennan*, 511 U.S. 825, 839, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). As the Court noted *supra*, although the usual defendants in claims regarding the conditions of individual prison cells are institutional officials who personally observe those conditions or to whom an inmate complains, a higher-level prison official who knows of specific conditions posing a serious risk to inmate safety through grievances or other written inmate communications may be subjected to personal liability if he or she fails to act reasonably to address that risk. *See* Doc. 5 at 4 (citing *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("[Plaintiff's] grievance," to which warden signed response, "demonstrates the prison and warden's knowledge of the conditions about which he is complaining"); *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) (citing *Vance*, 97 F.3d at 992–93 ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority to take the needed action to investigate, and, if necessary, to rectify the offending condition."))). Matthews alleges that Pfister returned his November 7, 2016 grievance detailing the mold, paint chips that made him feel as though he had hot pepper in his throat, excessive cold due to missing window panes, mice infestation, and roaches that crawled over his body and into his ears as an unsubstantiated emergency. He further claims the conditions remained unaddressed. As with Lamb and Johnson, this suffices, at this stage to suggest that Pfister knew of the conditions but failed to take reasonable steps to resolve them. *See Reyes v. Ill. Dep't of Corrs.*, No. 16-cv-0826-NJR, 2016 WL 5374127, at *4–5 (S.D. Ill. Sept. 26, 2016) (holding that plaintiff could

7

proceed with claims regarding cell conditions as to those officials specifically notified of the conditions through grievance process).

With respect to Baldwin, Matthews has sufficiently alleged "potentially systemic" constitutional violations, as opposed to "clearly localized" ones, such that the Court can reasonably infer Baldwin's involvement at this stage. *Britton v. Williams*, No. 16 C 11180, 2017 WL 4410117, at *4 (N.D. Ill. Oct. 4, 2017) ("In evaluating a deliberate indifference claim under Rule 12(b)(6), 'the personal involvement of senior [prison] officials, such as [Baldwin and Pfister], can be inferred [when] . . . the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations.'" (alterations in original) (quoting *Smith v. Dart*, 803 F.3d 304, 309 n.2 (7th Cir. 2015))); *see Antonelli*, 81 F.3d at 1429 (finding directors, wardens, and sheriffs "can be expected to know of or participate in creating systemic, as opposed to localized, situations"). The Court therefore finds that Matthews has sufficiently pleaded the deliberate indifference of the Moving Defendants.

### B. Deliberate Indifference to Serious Medical Needs

The Seventh Circuit has "identified several circumstances that can be enough to show deliberate indifference [to serious medical needs]. First, and most obvious, is a prison official's decision to ignore a request for medical assistance." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Matthews requested medical assistance repeatedly, and repeatedly, Lamb and Johnson ignored his requests. Matthews' July 6, 2015 grievance requested mental health treatment and for his cell to be cleaned of the raw sewage that covered the floor. His July 9 grievance requested treatment for his neck and back injuries. His September 23 grievance detailed how he needed three of his toenails removed due to an infection he developed in his cell from the lack of

medical care and the unsanitary conditions listed in his previous grievances. Each of these, Lamb returned as an unsubstantiated emergency, and Johnson returned anywhere from four to seven months later claiming Matthews had not timely filed them. Matthews' ignored requests for medical assistance, and the "inexplicable delay[s] in treatment" are enough to plead their personal involvement at this stage. *See Serio v. Rauner*, No. 15 C 6262, 2019 WL 1129495, at *8 (N.D. Ill. Mar. 12, 2019) (denying summary judgment where defendants were aware of plaintiff's condition and declined to address it, citing *Petties*, 836 at 729 (explaining that "a prison official's decision to ignore a request for medical assistance" may establish a defendant's subjective indifference to a prisoner's serious medical need)). The Court therefore finds that Matthews has sufficiently pleaded deliberate indifference to serious medical needs with respect to Lamb and Johnson.

## CONCLUSION

For the foregoing reasons, the Court denies the Moving Defendants' motion for judgment on the pleadings [79].


Dated: September 24, 2019

_____
SARA L. ELLIS
United States District Judge

9