**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOSHUA L. MATTHEWS,

        Plaintiff,

    v.

ILLINOIS DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

No. 16-cv-11214
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joshua Matthews (Matthews), a prisoner incarcerated at the Stateville Correctional Center (Stateville), in the custody of the Illinois Department of Corrections (IDOC), brings this suit under 28 U.S.C. § 1983 against various Defendants, asserting claims of deliberate indifference under the Eighth Amendment. R. 35, First Amended Complaint (FAC).[1] Specifically, Matthews alleges that Defendants Warden Nicholas Lamb (Lamb), Psychologist Dr. Bridgette Lanktree, Psychologist Dr. Catherine Larry, Psychologist Dr. Mirsky, Medical Director Saleh Obaisi, Nurse Kelly McCastland-Gallagher (McCastland),[2] Mental Health Professional Sara Cheshareck, and Warden of Programs Victor Calloway were deliberately indifferent to his serious medical needs, and that Defendants Lamb, Warden Randy Pfister, Director John Baldwin, Warden of Programs Nicholson, and

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]McCastland was incorrectly sued as "Nurse Kelly McCasklind."

Major Nina Watts (collectively, IDOC Defendants) were deliberately indifferent to hazardous prison conditions. *Id.* Defendants have moved for summary judgment in five separate summary judgment motions. R. 242, McCastland MSJ; R. 243, Obaisi MSJ; R. 249, Cheshareck MSJ; R. 256, Larry MSJ; R. 269, IDOC MSJ. The Court addresses only McCastland's motion for summary judgment in this Opinion and will address the remaining Defendants' summary judgment motions in separate orders. For the following reasons, the Court grants in part and denies in part McCastland's motion.

## Background

### I.  Local Rule 56.1 Statements and Responses and Matthews' Declaration

Before considering the merits of the motion, the Court first addresses some Local Rule 56.1 and preliminary evidentiary issues.

Local Rule 56.1 governs summary judgment briefing in the Northern District of Illinois. When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(Local Rule 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acq. Co., LLC v. AIP Products Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1)). The Local Rule 56.1 Statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and

2

either admit each fact, or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-moving party is to file a statement of additional facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

McCastland objects to nearly all of Matthews' statements of additional facts as unsupported by citations to evidentiary material pursuant to Local Rule 56.1(d)(2). *See* Def.'s Resp. PSOAF ¶¶ 1–6, 8–9, 11–13, 15, 18–20.[3] A court need not consider any

---

[3]Citations to the parties' Local Rule 56.1 statements of material facts are identified as follows: "DSOF" for McCastland's statement of facts (R. 255-1); "Pl.'s Resp. DSOF" for Matthews' response to McCastland's statement of facts (R. 286); "PSOAF" for Matthews' statement of additional facts (R. 294); and "Def.'s Resp. PSOAF" for McCastland's response to Matthews' statement of additional Facts (R. 311).

statement of fact not supported by evidence. *Cracco*, 559 F.3d at 632. However, the aforementioned statements of additional facts are supported by specific citations to evidentiary material. McCastland's responses to each statement, however, argue that the cited evidence does not support the statement of additional fact. To the extent that any such statement of additional facts is material to the Court's analysis, the Court has reviewed the evidence cited both in the statement of additional facts and by McCastland in response. If the Court agrees with McCastland that the evidence cited by Matthews in the statement of additional facts does not support the asserted fact, the Court so notes in the Opinion. If the evidence is merely conflicting, then, as described below, the Court must draw all reasonable inferences in Matthews', the non-movant's, favor. *See, e.g.*, *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

McCastland also objects to many of Matthews' statements of additional facts as containing legal argument in violation of Local Rule 56.1(d)(4). Def.'s Resp. PSOAF ¶¶ 6, 8–9, 11–13, 15, 18, 20. Matthews also objects to one of McCastland's statements of fact as an improper legal conclusion. Pl.'s Resp. DSOF ¶ 74. True, "[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact). However, the Court sees few legal arguments or conclusions in the statements of facts or additional facts. To the extent that any statement of facts or additional

facts is material to the Court's analysis, the Court will not consider legal conclusions or argument and will note in the Opinion if it disregards any statement on this basis.

McCastland advances several additional arguments as to why the Court should not consider certain of Matthews' statements of additional material facts. Specifically, she argues that the Court cannot consider Matthews' grievances submitted to prison officials, as the contents are inadmissible hearsay. Def.'s Resp. PSOAF ¶¶ 1–2 (citing, among other cases, *Taybron v. Baker*, 2018 WL 4489602, at *3 (N.D. Ill. Sept. 19, 2018); *Rankin v. Wexford Health Sources, Inc.*, 2019 WL 3554543, at *6 (N.D. Ill. Aug. 5, 2019)). True, prison grievances are hearsay statements. *See Rankin*, 2019 WL 3554543, at *6. But as the court in *Rankin* noted, "at the summary-judgment stage, a court may consider any evidence that would be admissible at trial; it need not be admissible in form, but it must be admissible in content"; accordingly, "while [the plaintiff's] grievances are hearsay, the statements contained therein are matters within his own personal knowledge, to which he can testify at trial" and could be considered at summary judgment. *Id.*; *see also Taylor v. Dart*, 2022 WL 4483908, at *2 (N.D. Ill. Sept. 27, 2022), *appeal dismissed sub nom. Taylor v. Pretty*, 2023 WL 7279288 (7th Cir. June 1, 2023) (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 & n.2 (7th Cir. 1994)). Here, the statements contained in the at-issue grievances relate to roaches in Matthews' cell, including Matthews' complaints that roaches were crawling on him and waking him up. PSOAF ¶¶ 1–2 (citing R. 288-3, Grievances at

PageID 9036–9039[4]). Like the statements in the grievances in *Rankin*, Matthews' statements about the roaches are matters within his own personal knowledge, to which he can testify to at trial. *Rankin*, 2019 WL 3554543, at *6. Accordingly, the Court will not disregard the grievances as hearsay at this stage of the proceedings.

Next McCastland argues that much of the evidence cited by Matthews in support of his statements of additional facts is "self-serving" and supported only by his declaration or deposition testimony. Def.'s Resp. PSOAF ¶¶ 3, 5–6, 8, 11–12, 13, 15. McCastland cites no authority for the proposition that a plaintiff's own "self-serving" statements are not valid evidence, nor could she, as the law is clear in this Circuit that such evidence is competent evidence that can defeat a motion for summary judgment. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) ("We begin by noting that the district court discredited [plaintiff's] testimony about his interactions with coworkers because of its 'self-serving' nature. This was error. Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.") (cleaned up) [5]; *Snow v. Obaisi*, 2021 WL 4439421, at *10 (N.D.

---

[4]Because the bates numbers on Matthews' grievances are somewhat inconsistent and hard to read, for ease of reference, the Court cites to the CM/ECF PageID found at the top of the filed document. So too with Matthews' medical records, found in R. 290-1.

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Ill. Sept. 28, 2021) ("It is well-established that a plaintiff's 'first-hand account' of a conversation 'is competent evidence,' even if a trier of fact could reasonably infer from the 'lack of mention' in a record of a note 'that the issue was not raised.'") (quoting *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021)). Therefore, "while [McCastland] remain[s] free to attack the credibility and weight of [Matthews'] uncorroborated testimony at trial, [she] cannot dispute that Matthews' testimony constitutes admissible evidence sufficient to defeat summary judgment." *Id.*

As to McCastland's argument, raised in reply, as to the inadmissibility of Matthews' declaration for failure to meet the requirements of 28 U.S.C. § 1746, R. 312, Reply at 2–3, the concerns raised by McCastland have been addressed by the filing of Matthews' updated signature page, R. 318, which the Court authorized by granting Matthews' motion to supplement the record, R. 319. Accordingly, the Court considers Matthews' declaration.

Finally, McCastland also argues that some of Matthews' statements of additional facts relate to Matthews' hazardous prison conditions claims brought against Defendants other than McCastland. Def.'s Resp. PSOAF ¶¶ 1–3, 10. McCastland also points out in reply that Matthews' response brief cites to his statements of additional facts directed at different Defendants in support of arguments relating to McCastland's summary judgment motion, and conversely cites to his statements of additional facts directed at McCastland in support of arguments relating to different Defendants. Reply at 11–12. As McCastland states, the Court previously denied Matthews' request to file an omnibus statement of additional facts,

instead requiring Matthews to file statements of additional facts specific to each distinct summary judgment motion. *Id.* at 11 (citing R. 292). Therefore, the Court will not consider statements of additional facts directed at Defendants other than McCastland when resolving her motion. And the Court does not read Matthews' response to attempt to assert hazardous prison condition claims against McCastland, nor could it, as he did not allege such claims in the FAC. *See Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (cleaned up). So, to the extent the response cites to Matthews' statement of additional facts directed at McCastland in relation to an argument as to hazardous prison conditions, the Court does not consider it for purposes of resolving McCastland's summary judgment motion.

With those preliminary matters out of the way, the Court turns to the material facts relating to Matthews' claims against McCastland.

## II.    Material Facts

The following undisputed facts are set forth as favorably to Matthews, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Matthews' favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo*, 805 F.3d at 281 (7th Cir. 2015); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (cleaned up) ("Given this summary judgment lens, we do not vouch for the objective

truth of all of these facts."). This background section details all material undisputed facts relating to Matthews' claims against McCastland and notes where facts are disputed, to the extent the disputed facts are supported by record evidence.

Matthews, at all relevant times, was an individual in the custody of the IDOC housed at Stateville. Pl.'s Resp. DSOF ¶ 1. McCastland was employed by Wexford Health Sources, Inc. (Wexford), the health care contractor for Illinois prisons, as a corrections nurse at Stateville for approximately a year and a half, starting in the fall of 2016. *Id.* ¶ 2.

McCastland saw Matthews on November 4, 2016 for a complaint of roaches in his ears. Pl.'s Resp. DSOF ¶ 10. Another nurse extracted a dead roach from Matthews' ear and McCastland sent Matthews to the healthcare unit for an ear lavage. *Id.* McCastland saw Matthews again the next day, November 5, 2016 for an earache related to the bugs in his ears. *Id.* ¶ 11. McCastland's November 5, 2016 progress note states that she saw Matthews for earwax and that she gave him ear drops. DSOF ¶ 11. Matthews saw a nurse other than McCastland on November 8, 2016 for complaints relating to his ear, and was encouraged to use ear drops and was scheduled for a doctor appointment. Pl.'s Resp. DSOF ¶ 12.

On November 4, 2016, Matthews also complained to McCastland about bug bites on his back and legs, but McCastland did not address those complaints nor chart them. Pl.'s Resp. DSOF ¶ 10. McCastland does not recall Matthews complaining of bug bites on that date. DSOF ¶ 10. Matthews followed up with McCastland about medicated cream to treat the bug bites several times, including on November 15 and

9

November 23, and eventually received medicated cream, which helped alleviate the skin irritation. Def.'s Resp. PSOAF ¶ 9.

Matthews saw McCastland on December 5, 2016 and told her that he had a spider bite on his toe and that his foot had an open wound and was swollen to the point where he could not put on shoes. PSOAF ¶¶ 11–12. Matthews testified that McCastland responded with something to the effect of "you know what? I'm done with him. Get him out of here." *Id.* ¶ 13. McCastland disputes that she said this to Matthews, and disputes that Matthews' foot was swollen or had an open wound, as the December 5 progress note does not say anything about a spider bite. Def.'s Resp. PSOAF ¶¶ 11–13. On December 7, 2016, Matthews saw Nurse Kim, at which time she charted that he complained of a spider bite and gave him antibiotic ointment packets, writing in her progress note, "Small papule on dorsal surface of left 4th toe. No erythema, no drainage. Abx (antibiotic) ointment packets given; advised to keep clean with soap and water." Pl.'s Resp. DSOF ¶ 62; Def.'s Resp. PSOAF ¶ 14.

The parties disagree about the next two visits Matthews had with McCastland. Matthews states that he attended sick call on December 8 and 9, 2016, at which times he showed McCastland the spider bite again, complaining of pain and requesting treatment or antibiotics. PSOAF ¶ 15. He states that McCastland responded, "[n]othing's wrong with your foot," and walked away. *Id.* McCastland relies on her progress notes from those days, which report that Matthews refused treatment both days and told McCastland, "I'm straight[,] I don't need to see you, I got medicine for my toe yesterday" and "I don't want to see you!" on December 8 and 9, 2016

10

respectively. Def.'s Resp. PSOAF ¶ 15; DSOF ¶¶ 63–64. The parties agree that neither progress note mentions anything about a spider bite. Def.'s Resp. PSOAF ¶ 15.

On December 10, 2016, Matthews was taken to the emergency room due to swelling, redness, bleeding, and heat on his foot and he was seen by a nurse other than McCastland. Def.'s Resp. PSOAF ¶ 18. The medical records reflect that the symptoms were caused by a spider bite on Matthews' toe and that he reported the pain as "10/10." *Id.*; R. 290-1, Medical Records at PageID 9008. The same day, Matthews saw a doctor, who prescribed at 10-day antibiotic. Pl.'s Resp. DSOF ¶ 66. Matthews presented to sick call for a dressing change on December 13, 2016 and requested supplies to dress the wound himself. Def.'s Resp. PSOAF ¶ 19; Pl. Resp. DSOF ¶ 67. Matthews saw McCastland for another dressing change on December 14, 2016. Pl. Resp. DSOF ¶ 18. McCastland testified that he became argumentative, so she was unable to see the condition of Matthews' toe to make an assessment, but she does not recall seeing any signs of infection. DSOF ¶ 18. Matthews of course denies that he was argumentative, testifying that he was asking McCastland questions about her treatment of the wound, and she left halfway through addressing the wound and another nurse took over. Pl. Resp. DSOF ¶ 18.

On December 16, Matthews was diagnosed with Methicillin-resistant Staphylococcus aureus (MRSA) in the fourth toe on his left foot and had to receive treatment and additional medication off-site at University of Illinois at Chicago Medical Center. Def.'s Resp. PSOAF ¶ 19.

**Legal Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Matthews claims that McCastland was deliberately indifferent to his serious medical conditions including a mouse bite/scratch, bug bites on his body, roaches in his ears, and a spider bite that caused a MRSA infection, all of which caused Matthews unnecessary pain and suffering. FAC ¶¶ 5, 27, 58, 65, 66, 82. McCastland argues that she is entitled to summary judgment, as most of Matthews' alleged medical conditions are not objectively serious and the evidence shows that McCastland was not subjectively indifferent to any of Matthews' alleged conditions. R. 254, Memo. SJ at 4–9.

"The Eighth amendment prohibits deliberate indifference to prisoners' serious medical needs because it constitutes an unnecessary and wanton infliction of pain." *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish an Eighth Amendment deliberate indifference claim, a plaintiff must prove that: (1) he suffered from an objectively serious medical condition; and (2) the individual defendant was deliberately, that is subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) cert denied, ---U.S.----, 140 S. Ct. 50, 205 L. Ed. 2d 38 (2019). A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a lay person." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It "need not be life-threatening to be serious; rather, it could be a condition that would

result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019) (cleaned up).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of the risk to the inmate's health, and then the official must disregard that risk. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). In other words, the prison official must have acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). A plaintiff may establish deliberate indifference by showing that the defendant "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "The standard is a subjective one: the defendant must know facts from which [s]he could infer that a substantial risk of serious harm exists, and [s]he must actually draw that inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

"When a prison medical professional is accused of providing *inadequate* treatment (in contrast to no treatment), evaluating the subjective state-of-mind element can be difficult." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (emphasis in original). Evidence of medical negligence is not enough to prove deliberate indifference. *Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). However, a doctor who provides some treatment may still be held liable if [s]he possessed a sufficiently culpable mental state. *Zaya*, 836 F.3d at 805 (citing *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)).

14

The Seventh Circuit has emphasized the deference owed to the professional judgment of medical personnel. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); *see also Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (describing the standard for "professional judgment"). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference . . . A [medical professional] who claims to have exercised professional judgment is effectively asserting that [s]he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the [medical professional] in entitled to summary judgment." *Zaya*, 836 F.3d at 805. But deference does not mean that a defendant automatically escapes liability when the defendant invokes professional judgment as a basis for a treatment decision. *Id.* Where evidence exists that the medical professional "knew better than to make the medical decision that [s]he did," then summary judgment is improper. *Whiting*, 839 F.3d at 664 (citing *Petties*, 836 F.3d at 730–31).

## I.    Objectively Serious Medical Conditions

McCastland first argues that two of Matthews' conditions—the mouse bite/scratch and bug bites and the spider bite that caused MRSA—are not objectively serious conditions. The Court addresses each type of bite in turn.

### A. Spider Bite

The parties dispute whether the spider bite on Matthews' toe, which led to his MRSA infection, was objectively serious. McCastland cites to several cases finding that "routine" spider bites, even those that become infected, do not constitute "serious

medical needs." Memo. SJ at 4–5 (citing *Fryer v. Ledvora*, 2017 WL 36445, at *5 (N.D. Ill. Jan. 4, 2017); *Jellis v. Hulick*, 422 F. App'x 548, 550 (7th Cir. 2011), among out-of-Circuit cases). On the other hand, Matthews cites to numerous cases finding that MRSA constitutes an objectively serious medical condition. R. 293, Resp. at 5–6 (citing *Myrick v. Anglin*, 496 F. App'x 670, 674 (7th Cir. 2012); *Peters v. Bailey*, 2020 WL 5593754, at *5 (N.D. Ill. Sept. 18, 2020); *Bilik v. Hardy*, 2019 WL 4735394, at *6 (N.D. Ill. Sept. 27, 2019); *Moore v. Williams*, 835 F. App'x 143, 144 (7th Cir. 2021)). None of the cases cited by either party is on all fours with the facts here; however, the Court agrees with Matthews that there is at least a question of fact as to whether the spider bite and resulting MRSA infection constitute a serious medical condition.

Starting with the cases cited by McCastland, in *Fryer*, the plaintiff-pretrial detainee visited the infirmary for a bump on his chest that he believed to be a spider bite. 2017 WL 36445, at *2. Three days after the plaintiff initially raised the concern, a doctor gave him antibiotics and wound care, after which his symptoms resolved a day later. *Id.* at *3, 6. Even though the plaintiff presented evidence that the wound had become infected, the court found that such an infected bite does not rise to the level of a serious medical need where the pustule resolved promptly following antibiotics and did not cause any ongoing health issues, and "[a]t most, [the plaintiff] experienced discomfort when his shirt touched the affected area of his chest." *Id.* at *6. In *Jellis*, the plaintiff-inmate was bitten by a spider and asked to go the infirmary as he was allergic to spider bites. 422 F. App'x at 549. The guard refused to take the inmate to the infirmary as the prison was on lockdown at the time and the guard did

not believe the inmate's condition warranted emergency treatment. *Id.* The Seventh Circuit affirmed dismissal of the suit, finding that a "two-centimeter, day-old [spider] bite" did not constitute a serious medical need that would have been obvious to a layperson, in contrast to a "'purulent draining infection' accompanied by extreme pain and high fever." *Id.* at 550 (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Unlike in *Fryer* and *Jellis*, where the plaintiffs presented evidence of or alleged the presence of relatively minor bumps that they alleged were objectively serious, here Matthews has presented evidence that, when he saw McCastland on December 5, 2016, his foot had an open wound and was swollen to the point where he could not put on shoes. PSOAF ¶ 12 (citing R. 288-15, Matthews' Dep. at 89:17–91:5). Although McCastland disputes those facts, Def.'s Resp. PSOAF ¶ 12, as stated above, *see supra* Section Background I, the Court credits Matthews', the non-movant's, deposition testimony regarding his symptoms, which he is competent to testify about. *See, e.g.*, *Snow*, 2021 WL 4439421, at \*10; *Armbruster v. Shah*, 2019 WL 5874335, at \*12 (S.D. Ill. July 23, 2019), *report and recommendation adopted*, 2019 WL 4200601 (S.D. Ill. Sept. 5, 2019) ("[A] jury could still conclude [plaintiff] had a serious medical need based on his reported symptoms alone."). There is at least a question of fact as to whether these symptoms accompanying the reported spider bite alone "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Peters*, 2020 WL 5593754, at \*4 (cleaned up).

And not only was Matthews' wound more serious than those at issue in *Fryer* and *Jellis*, but Matthews has presented evidence that the spider bite led to a MRSA infection, which was diagnosed on December 16, 2016. PSOAF ¶ 11 (citing Medical Records at PageID 9011; R. 248-5, Golden Dep. at 70:6–24; 71:1–11); Def.'s Resp. PSOAF ¶ 19 (admitting that Matthews was diagnosed with MRSA). True, as McCastland points out in reply, most of the cases Matthews cites to in response do not involve *disputes* about whether MRSA is an objectively serious condition, so the courts accepted for purposes of the motions that MRSA is objectively serious. Reply at 5. But that in itself is telling. And in *Myrick*, cited by Matthews, the Seventh Circuit found that the plaintiff's "claim of 'excruciating pain' from his skin infections, including the MRSA infections, presented a sufficiently serious condition to support an Eighth Amendment claim." 496 F. App'x at 674. McCastland argues that *Myrick* is distinguishable from the facts of this case, because Matthews has not indicated that he experienced "excruciating pain." Reply at 5. True, Matthews did not testify that he suffered such pain, but he testified that he had an open wound on his foot and it was so swollen that he could not put on a shoe. Matthews' Dep. at 89:17–25. Moreover, the medical records show that Matthews was taken to the emergency room due to swelling, redness, bleeding, and heat on his foot, which was documented as caused by a spider bite, and documented that Matthews reported the pain as "10/10." PSOAF ¶ 18 (citing Medical Records at PageID 9008–9009). As in *Myrick*, the Court finds that the evidence presented of Matthews' symptoms accompanying the MRSA infection were sufficiently serious to support an Eighth Amendment claim.

Accordingly, the Court agrees with Matthews that the spider bite was objectively serious. The Court address below whether a question of fact exists as to whether McCastland was deliberately indifferent to that condition.

## B. Mouse Bite/Scratch and Bug Bites

McCastland also contends that Matthews' injuries or skin conditions caused by a mouse bite/scratch and bug bites were not objectively serious. Memo. SJ at 5–6. Matthews presents scant evidence as to any injury caused by a mouse. He testified that a mouse got into his pants while he was sleeping and caused a wound. Pl.'s Resp. DSOF ¶ 21 (citing Matthews Dep. at 149:3–23). Beyond stating that McCastland refused to see him for the injury, he does not point to any evidence describing the injury at all, either in his response to McCastland's statement of facts nor in his statement of additional facts.

As to the bug bites, Matthews testified that he was covered in bug bites from approximately his mid-back to his hamstrings which irritated his skin, which he told McCastland about on November 4, 2016. PSOAF ¶ 8 (citing Matthews Dep. at 82:15–24); *see also* Matthews Dep. at 142:12–13. Matthews followed up with McCastland about medicated cream to treat the bug bites several times, and eventually received medicated cream, which helped alleviate the skin irritation. PSOAF ¶ 9 (citing Medical Records at PageID 9001–02; Matthews Dep. at 85:24–25; 87:6–10; 142:16–22).

As an initial matter, Matthews admits that he *does not* allege that McCastland was deliberately indifferent because he did not receive cream for treatment of his bug

bites. Pl.'s Resp. DSOF ¶ 48. To the extent that he alleges any sort of deliberate indifference claim against McCastland based on her treatment of the bug bites or the mouse bite/scratch, the Court agrees with McCastland that Matthews has not shown that any condition resulting from the bites and/or scratch was an objectively serious medical need, as he admits the condition resolved after treatment. *See* Memo. SJ at 5–6 (citing, among other cases, *Fryer*, 2017 WL 36445, at \*5 ("[W]ithout other repercussions, an uncomfortable skin issue that responds to treatment is not an objectively serious medical need."); *Smith v. Schwartz*, 2011 WL 2115831, at \*3 (S.D. Ill. May 26, 2011) ("[Plaintiff's] allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks due to an inability to shower and clean his cell while Pinckneyville was locked down do not show a serious medical condition.")).

Moreover, Matthews did not respond to McCastland's argument that any condition caused by the bug bites and mouse bite/scratch was not objectively serious and thus has waived any response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Rogan v. Allied Tube & Conduit Corp.*, 2010 WL 1032422, at \*8 (N.D. Ill. Mar. 15, 2010) (granting summary judgment to defendant where it provided evidence that it had not breached agreement and plaintiff "waived any argument to the contrary by failing to respond").

All in all, even in viewing the evidence in Matthews' favor, the Court finds that no reasonable jury could find that the bug bites and mouse bite/scratch are objectively

serious conditions and as such enters judgment in McCastland's favor on Matthews' claims of deliberate indifference to serious medical needs based on these conditions.

## II.    Subjective Deliberate Indifference

Next, the Court turns to whether McCastland had the requisite state of mind necessary to establish a claim for deliberate indifference to medical need based on the spider bite that led to Matthews' MRSA infection and the cockroaches in Matthews' ear. Because the Court finds that the bug bites and mouse bite/scratch are not objectively serious medical conditions, the Court need not address whether McCastland was deliberately indifferent when treating them.

### A. Spider Bite

The parties disagree as to whether Matthews has adduced sufficient admissible evidence to create a question of fact as to whether McCastland was deliberately indifferent when treating Matthews' spider bite that led to MRSA. The Court finds it to be a close question, but finds that Matthews has done enough to defeat summary judgment on this claim.

The parties dispute whether Matthews told McCastland about the spider bite when she saw him on December 5, 2016. Matthews, relying on his own testimony, states that he showed McCastland his foot, which was swollen and had an open wound, and that McCastland responded with something to the effect of "you know what? I'm done with him. Get him out of here."[6] PSOAF ¶¶ 12–13. McCastland, on the other hand, disputes that McCastland went to sick call on December 5 for a spider

---

[6]Because this is McCastland's own statement, it is not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(A).

bite or that she refused to treat it, pointing to the progress note she wrote on December 5, which does not mention Matthews' spider bite or related symptoms, but rather relates to X-rays. Def.'s Resp. PSOAF ¶¶ 12–13. Similarly, the parties dispute whether Matthews complained to McCastland about pain from the spider bite again on December 8 and December 9, 2016. Matthews, again relying on his own testimony, states that he attended sick call and showed McCastland the spider bite again, at which time he complained of pain and requested treatment or antibiotics. PSOAF ¶ 15. He states that McCastland responded, "[n]othing's wrong with your foot," and walked away. *Id.* McCastland again disputes that Matthews went to sick call on either date regarding a spider bite, relying on her progress notes from those days, which report that Matthews refused treatment both days told McCastland, "I'm straight[,] I don't need to see you, I got medicine for my toe yesterday" and "I don't want to see you!" on December 8 and 9, respectively. Def.'s Resp. PSOAF ¶ 15; DSOF ¶¶ 63–64.[7] Neither progress note mentions anything about a spider bite. *Id.*

McCastland argues that "[i]t is well established that an inmate cannot dispute the validity of medical records and entries therein without any contrary evidence, and uncorroborated testimony is insufficient to defeat summary judgment." Reply at 9 (*Myers v. McAuley*, 2003 WL 22232830, at *11 (N.D. Ill. Sept. 16, 2003); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997); *Chiaramonte v. Fashion Bed Grp., Inc., a Div. of Leggett & Platt, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)). As stated above, however, a plaintiff's self-serving testimony can create a

---

[7]DSOF ¶ 63 refers to a 12/06/2016 note, but that appears to be a scrivener's error, as it cites to a 12/08/2016 note, Medical Records at PageID 9006.

material factual dispute, *Hill*, 724 F.3d at 968 & n.1, even when the testimony contradicts medical reports, *Snow*, 2021 WL 4439421, at *10. The cases cited by McCastland do not dictate otherwise.

In *Myers*, the court found that the plaintiff did not create a material issue of fact regarding the sufficiency of his treatment where he presented contradictory testimony—alternating between stating that he received only over-the-counter Tylenol and stating that he received prescription pain medicine whenever he saw the defendant-doctor—where the medical records reflected that he received prescription pain medications. 2003 WL 22232830, at *11. And although the Seventh Circuit stated in *Weeks* that "a plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment," 126 F.3d at 939, in a later decision, the court later qualified that statement, noting that the testimony at issue in *Weeks* was not insufficient because it was "self-serving," but rather it "fail[ed] to thwart summary judgment because [it was] not based on personal knowledge as required by both the Federal Rule of Civil Procedure on summary judgment, Rule 56(e)," *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). So, as the court found in *Snow*, here too the court finds that Matthews' testimony and affidavits—regarding matters within his personal knowledge like his symptoms and whether he told McCastland about them on various dates—is "admissible evidence sufficient to defeat summary judgment." 2021 WL 4439421, at *10. McCastland "remain[s] free to attack the credibility and weight of [Matthews'] uncorroborated testimony at trial." *Id.*

Therefore, at this stage, the Court credits Matthews' testimony that he did not refuse to see McCastland on December 8 and 9, 2016, but rather complained about the spider bite to her on those dates. So, the Court need not engage with McCastland's argument that Matthews himself is solely responsible for his lack of medical treatment based on his refusal to allow her to provide care for his spider bite. *See* Memo. SJ at 10–12.

In arguing that McCastland was deliberately indifferent to his objectively serious spider bite by refusing to provide treatment for it on December 5, 8, and 9, Matthews points to the IDOC's Bite Protocol, the operative protocol at Stateville as evidenced by the Offender Outpatient Progress Notes form, which indicates that "All reported 'spider bites' [are] treat[ed] as MRSA." Resp. at 23 (citing PSOAF ¶ 17). He also relies on McCastland's testimony that she acknowledged that prisoners are more susceptible to MRSA than the general population, and that it is possible that someone can be infected with MRSA if a wound is left untreated. *Id.* ¶ 16.

McCastland cites to her expert, Dr. Golden's, report, which states that implementation of the Bite Protocol was not required before December 10, 2016, as he found that there were no clinical signs of infection before this date and, because antibiotic resistance is a concern with all patients, administration of antibiotics without clinical evidence of infection is contraindicated. Memo. SJ at 8 (citing DSOF ¶ 40). And McCastland contends that at all times, she complied with the applicable community standard of care in deferring to Dr. Aguinaldo for treatment of the spider bite. *Id.* (citing DSOF ¶ 45). Dr. Aguinaldo saw Matthews on December 10, 2016 and

prescribed a 10-day antibiotic. Pl.'s Resp. DSOF ¶ 66. This is the same day Matthews was taken to the healthcare unit's emergency room due to the swelling, redness, heat, and bleeding of his foot. Def.'s Resp. PSOAF ¶ 18. McCastland points out that, as a registered nurse, she cannot diagnose an infection such as MRSA or prescribe appropriate antibiotics. Memo. SJ at 7–8 (citing DSOF ¶ 45).

As the Court has repeatedly indicated above, the Court at this stage must credit Matthews' version of events, so long as it is supported by admissible evidence. So, while Dr. Golden credited the medical records over Matthews' testimony to form his opinion, Def.'s Resp. PSOAF ¶ 20 (citing Golden Dep. at 71:5–73:23), the Court cannot do so. Therefore, the Court accepts for purposes of resolving this motion that, when Matthews saw McCastland on December 5, 2016, his foot had an open wound and was swollen to the point where he could not put on shoes. PSOAF ¶ 12. The IDOC's Bite Protocol states that when an inmate reports a bite, "Refer to MD: All reported 'spider bites' treat as MRSA. If . . . local changes at site of bite, Refer to MD stat." Medical Records at PageID 9008. According to the information Matthews testified that he told McCastland on December 5, 2016, McCastland should have initiated the Bite Protocol and referred Matthews to a doctor instead of sending him away.

And it matters not that McCastland was not qualified to diagnose or treat MRSA. Pursuant to Bite Protocol, she should have referred Matthews to a doctor, who could have diagnosed MRSA or prescribed antibiotics upon seeing Matthews, as Dr. Aguinaldo did on December 10, 2016. Instead, McCastland refused to do anything

about the bite on December 5, 8, and 9 when Matthews complained about it to her. *See Saintignon v. Wexford of Indiana, LLC*, 2023 WL 5177252, at *7 (S.D. Ind. Aug. 11, 2023) (even though nurse was not authorized to diagnose plaintiff "or order specific treatment, . . . as a member of the medical staff, she could have communicated [plaintiff's] medical distress to one of the facility's multiple onsite physicians," but instead told plaintiff "all the physicians were too busy to see him." The court found that the evidence supported "reasonable conclusion that there was more she could have done, even without being a licensed physician," and denied summary judgment).

Finally, the Court turns to McCastland's argument that Matthews has not presented verifying medical evidence that any delay in treatment had a detrimental effect. Memo. SJ at 13–14. In cases like this—where the plaintiff alleges the defendants delayed, rather than denied, medical treatment—the Seventh Circuit has required that the plaintiff "present verifying medical evidence" that the delay, and not the underlying condition, caused some harm. *Walker*, 940 F.3d at 964 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). "Clearly, expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement. On the other hand, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient *if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him*." *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (emphasis in original) (cleaned up).

The Court finds *Grieveson*, cited by both parties, instructive. In *Grieveson*, the plaintiff did not introduce expert testimony that his medical condition worsened

because of a delay in treatment, but rather "supplied medical records indicating that he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist. [The plaintiff] later underwent painful nose surgery." 538 F.3d at 779. The Seventh Circuit found that the evidence produced by the plaintiff "could certainly help a jury determine whether the delay unnecessarily prolonged and exacerbated [the plaintiff's] pain, and thus qualifie[d] as verifying medical evidence that supports a genuine issue of material fact regarding the seriousness of [the plaintiff's] medical condition." *Id.* He also provided evidence that the defendant-officers knew that he was in pain but did not secure medical treatment for him for at least one-and-a-half days until after they knew about the injury. *Id.* The Seventh Circuit found that the plaintiff's claim for deliberate indifference to medical needs survived summary judgment. *Id.* at 780. In so holding, the Seventh Circuit relied on *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007), which McCastland also cites in reply.

The Court also finds *Williams* instructive. In that case, the plaintiff-inmate presented non-medical record evidence that he woke up around 6:30 a.m. on the day in question experiencing chest pain, numbness in his arm, dizziness, nausea, and vomiting. 491 F.3d at 716. The plaintiff complained multiple times about his symptoms and pain to three different correctional officers, all of whom refused his requests for medical treatment. *Id.* at 712–13. Around 1:00 p.m., the plaintiff was carrying a heavy box containing his belongings up a flight of stairs when he blacked out and fell backwards down the stairs, at which time medical technicians responded

27

and sent him to the prison emergency room. *Id.* at 713. In the emergency room, the plaintiff received medication that quickly relieved his pain. *Id.* He rated his pain an 8/10 and had high blood pressure, an elevated pulse, and an abnormal heart rate. *Id.* Although his blood pressure decreased after about an hour, the plaintiff remained in the infirmary for six days. *Id.* The plaintiff alleged that the delay in treatment violated his Eighth Amendment rights. *Id.* at 714.

The parties disputed whether the plaintiff had offered sufficient verifying medical evidence. *Williams*, 491 F.3d at 715. The defendants' medical expert "testified that any delay in treatment [did not] appear to have had any significant adverse effect" on [the plaintiff's] condition." *Id.* at 714 (cleaned up). The plaintiff did not present expert testimony, but rather relied on the medical records from when he arrived at the hospital, which showed that he "had elevated blood pressure, had an abnormal EKG, was sweating, and complained of severe pain. The medical records also showed that with treatment, [the plaintiff's] symptoms, including his pain and high blood pressure, quickly subsided." *Id.* at 715. The Seventh Circuit found that, "[a]lthough no jury could determine, based on this record, whether it was the delay in care or the underlying condition that necessitated [the plaintiff's] treatment or affected his ability to work, a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated [his] pain and unnecessarily prolonged his high blood pressure." *Id.* at 715–16. It therefore rejected the defendants' argument that plaintiff had presented insufficient verifying medical

evidence and affirmed the district court's denial of judgment as a matter of law. *Id.* at 716.

Although McCastland cites both *Grieveson* and *Williams* for general legal propositions regarding the need verifying medical evidence, and Matthews relied on *Grieveson* in support of his argument that the medical evidence he presented was sufficient, Resp. at 24, McCastland does not distinguish the facts or holdings of *Grieveson* or *Williams* in either of her briefs, Memo. SJ at 13–14, Reply at 10–11.

As in both *Grieveson* and *Williams*, here Matthews has not provided expert testimony that the delay in treatment of his spider bite harmed him. But Matthews has presented evidence that he informed McCastland of the spider bite as of December 5, 2016 and there is a medical record dated December 7 documenting the bite. PSOAF ¶ 14 (citing Medical Records at PageID 9006). And, the medical records reflect that on December 10, 2016 he was taken to the healthcare unit's emergency room due to swelling, redness, bleeding, and heat on his foot, which was documented as caused by a spider bite, and at which time he reported the pain as "10/10." *Id.* ¶ 18 (citing Medical Records at PageID 9008–9009). Like in *Williams*, there are no medical records documenting Matthews' reported pain until the emergency room records. *See Williams*, 491 F.3d at 713, 715 (plaintiff told multiple correctional officers he was experiencing symptoms including chest pain in the morning, but first medical record is from his emergency room visit in the afternoon). Finally, on December 16, 2016 Matthews was diagnosed with MRSA in his toe and had to receive treatment and additional medication off-site at University of Illinois at Chicago Medical Center. *Id.*

¶ 19 (citing Medical Records at PageID 9011–9012). Also as in *Williams*, the only expert testimony on the issue is from the defense expert, here, Dr. Golden, who testified that, in his opinion, McCastland did not intentionally delay or withhold reasonable, necessary medical care to Matthews. Reply at 13 (citing DSOF ¶ 26); *Williams*, 491 F.3d at 715 ("The only testimony from a medical expert, Dr. Doughty, was that the delay did not appear to have adversely affected [the plaintiff's] condition.").

Although a close call, the Court finds that Matthews has presented sufficient verifying medical evidence to support a finding that the delay in treatment unnecessarily prolonged Matthews' pain, given his reported symptoms and MRSA diagnosis, which, as the Court has indicated above, is an objectively serious medical condition.[8] *See Williams*, 491 F.3d at 715–16 (although a jury could not determine from the records whether a delay in care of the plaintiff's underlying condition necessitated his treatment, "a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated [the plaintiff's] pain and unnecessarily prolonged his high blood pressure"); *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) ("'A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain*,' and 'even brief,

---

[8]The Court acknowledges that it somewhat recently granted a summary judgment motion in favor of a defendant-doctor in part based on the plaintiff-inmate's failure to provide "verifying medical evidence suggesting that a delay in receiving a hemorrhoidectomy increased his risk of substantial harm or other complications." *Barnes v. Wexford Health Sources, Inc.*, 2022 WL 20288624, at \*9 (N.D. Ill. Nov. 23, 2022). However, the crux of the finding in *Barnes* was that the delays in treatment were outside of the defendant-doctor's control. *Id.* Here, McCastland does not argue that she could not have followed Bite Protocol and referred Matthews to a doctor for treatment as early as December 5, 2016.

unexplained delays in treatment may constitute deliberate indifference.'") (quoting *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015) (emphasis in original)). That said, like in *Williams*, the Court finds that a reasonable jury could not determine based on the medical records, whether the *delay* in treatment caused Matthews to contract MRSA, as opposed to the bite itself; the Court's holding is limited to whether the delay caused Matthews to experience several days of additional pain for no good reason. 491 F.3d at 715–16. Accordingly, the Court denies McCastland's summary judgment motion as it relates to the treatment of Matthews' spider bite.

### B. Cockroaches in Ear

Because McCastland does not argue that the roaches in Matthews' ear was not an objectively serious medical condition, the Court assumes for purposes of this motion that it was. McCastland contends, however, that she did not have the state of mind necessary to support a claim that she acted with deliberate indifference when treating Matthews for this condition. Memo. SJ at 8–9. Matthews does not respond to McCastland's argument relating to her treatment of the roaches in his ear and thus has waived any response.[9] *See Bonte*, 624 F.3d at 466; *Rogan*, 2010 WL 1032422, at *8. The Court agrees with McCastland that, based on the evidence before the Court, she was not deliberately indifferent when providing care for the cockroaches in Matthews' ear.

---

[9]Matthews touches upon his ear care only in response to the IDOC Defendants' argument that Matthews cannot claim deliberate indifferences to inhumane conditions because he received medical care. Resp. at 32. Matthews argues that "the issue is not whether he received treatment, but whether the presence of roaches in his ears is evidence of deliberate indifference to inhumane conditions." *Id.*

Specifically, McCastland saw Matthews on November 4, 2016, for his complaint of roaches in his ears, at which time McCastland conducted an otoscope exam, another nurse extracted a dead roach from Matthews' left ear, and McCastland sent Matthews to the healthcare unit for lavage of the ear. Pl.'s Resp. DSOF ¶¶ 10, 30, 51. Other roaches were removed from Matthews' ear in the healthcare unit. *Id.* ¶ 47. McCastland saw him in follow-up the next day for an earache, at which time he was given ear drops and told to return if necessary. *Id.* ¶¶ 11, 52. The parties dispute whether McCastland saw Matthews putting roaches in his ears and whether he admitted doing so to her during the appointment. *Compare* DSOF ¶¶ 20, 52 *with* Pl.'s Resp. DSOF ¶¶ 20, 52. At this stage, the Court must credit Matthews' version, but it matters not for purposes of this motion, as the Court finds that whether Matthews was putting roaches in his ears is not material to whether McCastland provided inadequate care. On November 8, 2016, Matthews was seen by a different nurse for complaints of irritation of the ear and was encouraged to use ear drops and scheduled for a doctor appointment. Pl.'s Resp. DSOF ¶ 12. Matthews reported roaches in his ears to a physician's assistant on November 10, 2016 but the parties do not provide any evidence about whether McCastland was involved in follow-up care or if Matthews made any additional complaints to her about the roaches in her ear. *Id.* ¶ 55.

The above facts relating to McCastland's treatment of roaches in Matthews' ear do not support a finding that McCastland knew about a serious medical need but nevertheless purposefully and deliberately withheld treatment. *See Sellers v.*

*Henman*, 41 F.3d 1100, 110 (7th Cir. 1994). To the contrary, McCastland performed an exam on Matthews' ears when he first made the complaint, had another nurse remove a roach, and sent him to the healthcare unit for a lavage. She also saw him for follow-up care, when Matthews was provided ear drops. Nothing in the record showed McCastland's "total unconcern" for Matthews' welfare relating to the roaches in his ears. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020). Accordingly, McCastland is entitled to summary judgment on Matthews' deliberate indifference to medical care claim based on the treatment of roaches in his ears.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part McCastland's summary judgment motion [242]. The Court denies the motion as it relates to Matthews' deliberate indifference to medical care claims based on the treatment of his spider bite that led to a MRSA infection. It grants the motion as it relates to all other medical conditions, including bug bites and mouse bite/scratch and roaches in his ears. The Court will rule on the other pending summary judgment motions via separate orders.

Dated: February 29, 2024.

United States District Judge
Franklin U. Valderrama

33