## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSHUA L. MATTHEWS,

        Plaintiff,

    v.

ILLINOIS DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

No. 16-cv-11214
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Matthews (Matthews), a prisoner incarcerated at the Stateville Correctional Center (Stateville), in the custody of the Illinois Department of Corrections (IDOC), brings this suit under 28 U.S.C. § 1983 against various Defendants, asserting claims of deliberate indifference under the Eighth Amendment. R. 35, First Amended Complaint (FAC).[1] Specifically, Matthews alleges that Defendants Warden Nicholas Lamb (Lamb), Psychologist Dr. Bridgette Lanktree, Psychologist Dr. Catherine Larry, Psychologist Dr. Mirsky, Medical Director Saleh Obaisi (Dr. Obaisi),[2] Nurse Kelly McCastland-Gallagher

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]Matthews filed his lawsuit *pro se* against Dr. Obaisi and was not aware at the time of Dr. Obaisi's death. R. 59, Sugg. Death. Subsequently, through counsel, Matthews filed a suggestion of death and moved to substitute Dr. Obaisi's Independent Executor, Ghaliah Obaisi, as the Defendant in this case. *Id.* The Estate of Dr. Obaisi was substituted as a party under Federal Rule of Civil Procedure 25(a) on June 12, 2018. R. 62; Pl.'s Resp. DSOF ¶ 3. Because Dr. Obaisi is deceased, Matthews seeks only compensatory damages from him. R. 293, Resp. at 15 n.4. Accordingly, the Court need not address Dr. Obaisi's argument that

(McCastland),[3] Mental Health Professional Sara Cheshareck, and Warden of Programs Victor Calloway were deliberately indifferent to his serious medical needs, and that Defendants Lamb, Warden Randy Pfister, Director John Baldwin, Warden of Programs Nicholson, and Major Nina Watts (collectively, IDOC Defendants) were deliberately indifferent to hazardous prison conditions. *Id.* Defendants have moved for summary judgment in five separate summary judgment motions. R. 242, McCastland MSJ; R. 243, Obaisi MSJ; R. 249, Cheshareck MSJ; R. 256, Larry MSJ; R. 269, IDOC MSJ. In this Opinion, the Court addresses only Dr. Obaisi's motion for summary judgment and will address the remaining Defendants' summary judgment motions in separate orders.[4]

## Background

### I. Local Rule 56.1 Statements and Responses and Matthews' Declaration[5]

Before considering the merits of the motion, the Court first addresses some Local Rule 56.1 and preliminary evidentiary issues.

Local Rule 56.1 governs summary judgment briefing in the Northern District of Illinois. When "a party moves for summary judgment in the Northern District of

---

Matthews cannot recover punitive damages or seek injunctive relief from Dr. Obaisi. Memo. SJ at 2–4.

[3]McCastland was incorrectly sued as "Nurse Kelly McCasklind."

[4]The Court previously granted in part and denied in part McCastland's motion. R. 335, McCastland Opinion.

[5]Much of the Court's analysis in this Section follows the analysis in its Opinion on McCastland's summary judgment motion.

Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(Local Rule 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acq. Co., LLC v. AIP Products Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1)). The Local Rule 56.1 Statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact, or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-moving party is to file a statement of additional facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules

designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

Dr. Obaisi objects to every one of Matthews' statements of additional facts as unsupported by citations to evidentiary material pursuant to Local Rule 56.1(d)(2). *See* Def.'s Resp. PSOAF[6]; R. 309, Reply at 3–4. A court need not consider any statement of fact not supported by evidence. *Cracco*, 559 F.3d at 632. However, Matthews' statements of additional facts are supported by specific citations to evidentiary material. Dr. Obaisi's responses to each statement, however, argue that the cited evidence does not support the statement of additional fact or fails "to give the Court the whole picture of the evidence in this case." Reply at 4. To the extent that any such statement of additional facts is material to the Court's analysis, the Court has reviewed the evidence cited both in the statement of additional facts and by Dr. Obaisi in response. If the Court agrees with Dr. Obaisi that the evidence cited by Matthews in the statement of additional facts does not support the asserted fact, the Court so notes in the Opinion. If the evidence is merely conflicting, then, as described below, the Court must draw all reasonable inferences in Matthews', the non-movant's, favor. *See, e.g.*, *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

---

[6]Citations to the parties' Local Rule 56.1 statements of material facts are identified as follows: "DSOF" for Dr. Obaisi's statement of facts (R. 247); "Pl.'s Resp. DSOF" for Matthews' response to Dr. Obaisi's statement of facts (R. 287); "PSOAF" for Matthews' statement of additional facts (R. 295); and "Def.'s Resp. PSOAF" for Dr. Obaisi's response to Matthews' statement of additional Facts (R. 310).

4

Dr. Obaisi also objects to many of Matthews' statements of additional facts as containing legal argument in violation of Local Rule 56.1(d)(4). Def.'s Resp. PSOAF ¶¶ 1, 3–6, 10, 15–18; *see also* Reply at 3. Matthews also objects to one of Dr. Obaisi's statements of fact as an improper legal conclusion. Pl.'s Resp. DSOF ¶ 31. True, "[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact). However, the Court sees few legal arguments or conclusions in the statements of facts or additional facts. To the extent that any statement of facts or additional facts is material to the Court's analysis, the Court will not consider legal conclusions or argument and will note in the Opinion if it disregards any material statement on this basis.[7]

Dr. Obaisi also argues that much of the evidence cited by Matthews in support of his statements of additional facts is "self-serving" and/or supported only by his declaration or deposition testimony. Def.'s Resp. PSOAF ¶¶ 1–4, 6, 11, 14–15, 17. Dr.

---

[7]Dr. Obaisi also objects to three statements of fact as containing inadmissible hearsay. Def.'s Resp. PSOAF ¶¶ 4, 11, 14. "An out-of-court statement offered to prove the truth of the matter asserted is generally inadmissible hearsay. Conversely, an out-of-court statement is not hearsay—and is generally admissible—if it is not offered to prove the truth of the matter asserted." *Lovelace v. McKenna*, 894 F.3d 845, 849 (7th Cir. 2018) (cleaned up). In deciding a motion for summary judgment, the Court may only consider evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). As an initial matter, the Court notes that two of the three at-issue statements do not themselves include any statement from Dr. Obaisi (although the evidence cited in support does). *See* PSOAF ¶¶ 11, 14. The Court finds that Dr. Obaisi's statements themselves are not material to the analysis, so it need not determine whether they fall within a hearsay exception.

Obaisi cites just one thirty-year-old, non-binding case in support of the proposition that a plaintiff's own "self-serving" statements should be given little weight. Reply at 4–5 (citing *Walker v. Peters*, 863 F. Supp. 671, 672 (N.D. Ill. 1994)). However, the Seventh Circuit has subsequently made it clear that a plaintiff's "self-serving" declaration or testimony is competent evidence that can defeat a motion for summary judgment. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) ("We begin by noting that the district court discredited [plaintiff's] testimony about his interactions with coworkers because of its 'self-serving' nature. This was error. Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.") (cleaned up)[8]; *Snow v. Obaisi*, 2021 WL 4439421, at *10 (N.D. Ill. Sept. 28, 2021). Therefore, "while [Dr. Obaisi] remain[s] free to attack the credibility and weight of [Matthews'] uncorroborated testimony at trial, [he] cannot dispute that Matthews' testimony constitutes admissible evidence sufficient to defeat summary judgment." *Snow*, 2021 WL 4439421, at *10.

Finally, as to Dr. Obaisi's argument, raised in reply, as to the inadmissibility of Matthews' declaration for failure to meet the requirements of 28 U.S.C. § 1746, Reply at 2–3, the concerns raised by Dr. Obaisi have been addressed by the filing of

---

[8]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Matthews' updated signature page, R. 318, which the Court authorized by granting Matthews' motion to supplement the record, R. 319. Accordingly, the Court considers Matthews' declaration.

## II. Claims Alleged Against Dr. Obaisi

The Court must briefly address another threshold matter: what claims Matthews brings against Dr. Obaisi. In reply, Dr. Obaisi contends that Matthews has waived any argument that Dr. Obaisi was deliberately indifferent to his alleged chronic neck, back, and spine pain because Matthews makes no argument regarding those conditions in his response. Reply at 7–8. While it is true that failure to develop an argument constitutes waiver, *id.* at 8 (citing *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'on*, 2011 WL 210805, at *6 (N.D. Ill. Jan. 20, 2011)), that principle applies to both parties and here, Dr. Obaisi did not address his treatment of Matthews' neck, back, or spine pain anywhere in his opening motion, *see* R. 244, Memo. SJ. As the moving party, Dr. Obaisi has the burden of showing no genuine dispute exists as to any material fact on all claims, Fed. R. Civ. P. 56(a), so by failing to address those conditions in his motion, he waived any argument as to them, *Pennsylvania Chiropractic Ass'n*, 2011 WL 210805, at *6; *see also United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019) ("In most instances, litigants waive any arguments they make for the first time in a reply brief.") (citing *Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012); *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011)).

No matter, however, because the Court finds that the record before the Court is clear that Matthews is not alleging deliberate indifference claims against Dr. Obaisi based on any alleged condition other than the fungal infection on Matthews' feet. *See* Pl.'s Resp. DSOF ¶ 9 (citing R. 247-1, Def. Exh. 2, Matthews Dep. at 19:1–7; R. 247-2, Def. Exh. 3, Pl. 2nd Suppl. Resp. Interrogs. ¶ 4). Specifically, Matthews answered Dr. Obaisi's contention interrogatory regarding the claims Matthews brings against Dr. Obaisi by stating that he brings a claim against Dr. Obaisi for deliberate indifference to his serious medical need related to the fungal infection on his feet.[9] Pl. 2nd Suppl. Resp. Interrogs. ¶ 4.

With those preliminary matters out of the way, the Court turns to the material facts relating to Matthews' claim against Dr. Obaisi.

## III. Material Facts

The following undisputed facts are set forth as favorably to Matthews, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Matthews'

---

[9]A contention interrogatory is "[a]n interrogatory designed to discover the factual basis of the allegations in a complaint, answer, or counterclaim, or to determine the theory of the opposing party's case." *Interrogatory*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Lockhart v. ExamOne World Wide, Inc.*, 904 F. Supp. 2d 928, 948 n.16 (S.D. Ind. 2012), on reconsideration in part (Dec. 5, 2012) (party could have "served contention interrogatories to verify the claims or causes of action that Plaintiffs intended to pursue."). The Court acknowledges, however, that Matthews also references earlier supplemental responses to Dr. Obaisi's interrogatory no. 4. Those earlier supplemental responses are not cited in the parties' statements of material fact or responses, so the Court is not aware if those responses indicate that Matthews brings deliberate indifference claims against Dr. Obaisi relating to his treatment of any other medical condition. If so, Matthews should file a supplement on the docket, attaching his earlier response to Dr. Obaisi's interrogatory no. 4, by June 24, 2024.

favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo*, 805 F.3d at 281 (7th Cir. 2015); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (cleaned up) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts relating to Matthews' claim against Dr. Obaisi and notes where facts are disputed, to the extent the disputed facts are supported by record evidence.

Matthews, at all relevant times, was an individual in the custody of the IDOC housed at Stateville. Pl.'s Resp. DSOF ¶ 1. Dr. Obaisi was the Medical Director at Stateville from around April 2015 through June 2017. *Id.* ¶ 2.

Dr. Obaisi first examined Matthews on January 20, 2015. Pl.'s Resp. DSOF ¶ 10. The Medical Progress Notes reflect that Dr. Obaisi conducted 14 patient visits with Matthews between January 2015 and September 2015. *Id.* ¶¶ 10–27. Matthews testified that he spoke with Dr. Obaisi about his medical concerns outside of those 14 visits. Pl.'s Resp. DSOF ¶¶ 27–28; PSOAF ¶ 2.[10] Matthews also testified that he began complaining to medical health professionals, including Dr. Obaisi, about a fungal infection on his feet and toenails beginning in June 2015. PSOAF ¶ 2. Specifically, Matthews stated in his declaration that he complained to Dr. Obaisi about the fungal infection on multiple occasions, showed Dr. Obaisi his feet, and

---

[10]Dr. Obaisi objects to this statement of fact on the basis that it is supported only by Matthews' testimony and declaration. Def.'s Resp. PSOAF ¶ 2. As discussed above, however, the Court finds Matthews' own testimony and declaration to be admissible evidence at summary judgment. The Court therefore accepts this fact as true for purposes of summary judgment. The Court does not specify each instance in which Dr. Obaisi objects to any of Matthews' statements of additional facts solely based on the fact being supported only by Matthews' testimony or declaration.

requested treatment. *Id.* ¶ 3 (citing R. 289, Matthews Decl. ¶¶ 4, 27–31). None of the Medical Progress Notes written by Dr. Obaisi before September 15, 2015 document that Matthews complained about his feet or toenails or document any physical finding by Dr. Obaisi regarding an infection on Matthews' feet or toenails. Pl.'s Resp. DSOF ¶ 28.

Medical Progress Notes written by other providers, however, reflect that Matthews complained about his foot and toe infection three times before Dr. Obaisi documented it on September 15, 2015. Specifically, on August 2, 2015, Matthews complained to a nurse about a "painful" "fungal infection on [his] feet and toes," PSOAF ¶¶ 8–9 (citing R 290-1, Medical Records at PageID 8985–86),[11] but the nurse wrote that Matthews did "not appear to be in pain or distress," Pl.'s Resp. DSOF ¶ 33. On August 17, 2015, Matthews complained to a mental health professional about infected feet. Def.'s Resp. PSOAF ¶ 12 (citing Medical Records at PageID 8992). There is no evidence in the record that the nurse from the August 2 visit or the mental health professional from the August 17 visit informed Dr. Obaisi or consulted with him about Matthews' complaints about his infected feet or toes. Pl.'s Resp. DSOF ¶¶ 34–35, 41–42. Matthews again complained to a mental health professional on September 11, 2015 that he had an untreated infection on his feet, which was causing his nails to come off. Def.'s Resp. PSAOF ¶ 13 (citing R. 288-2, Mental Health Records at PageID 9020).

---

[11]Dr. Obaisi objects to this statement of fact as unsupported by the evidence and because it omits a notation on the Medical Progress Note that Matthews told the nurse that he did not want treatment. Def.'s Resp. PSOAF ¶¶ 8–9. The Court finds that the cited Medical Progress Note does support Matthews' statement of fact.

Dr. Obaisi first documented Matthews' toenail infection in a Medical Progress Note dated September 15, 2015, in which he wrote that he re-started Matthews' medications, noted Matthews' toenail infection (onychomycosis[12]) and scheduled him to have some toenails removed the following week. DSOF ¶¶ 45–46 (citing R. 247-5, Def. Exh. 6, Medical Records (Def.) at PageID 1690). Dr. Obaisi treated Matthews' fungal infection on September 23, 2015 by removing the infected nails under local anesthetic. Pl.'s Resp. DSOF ¶ 48; Def.'s Resp. PSOAF ¶ 14 (citing Medical Records (Def.) at PageID 1691). Dr. Obaisi also prescribed an oral antibiotic and provided instructions to Matthews on washing his feet and changing the dressings on his feet. DSOF ¶ 49. Dr. Obaisi did not prescribe topical or oral antifungal treatments until after Matthews' toenails had been removed. PSOAF ¶ 15.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial."

---

[12]Matthews denies that Dr. Obaisi diagnosed Matthews with onychomycosis, Pl. Resp. DOSF ¶ 62; however, Dr. Obaisi's September 23, 2015 Medical Progress Note states, "seen for severe onychomycosis," Medical Records (Def.) at PageID 1691.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Matthews claims that Dr. Obaisi was deliberately indifferent to his serious medical condition—a fungal infection on his toes and feet—by failing to timely treat the infection and by removing the toenails rather than treating them via a less invasive procedure, all of which caused Matthews unnecessary pain and suffering. R. 293, Resp. at 5. Dr. Obaisi argues he is entitled to summary judgment, as he was not subjectively indifferent to Matthews' fungal infection because he treated it promptly after becoming aware of it and his treatment was consistent with the applicable standard of care. Memo. SJ at 7–9. Moreover, argues Dr. Obaisi, Matthews fails to

offer the requisite verifying medical evidence that any delay in Dr. Obaisi's treatment of Matthews' fungal infection caused him harm. *Id.* at 10.

"The Eighth amendment prohibits deliberate indifference to prisoners' serious medical needs because it constitutes an unnecessary and wanton infliction of pain." *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish an Eighth Amendment deliberate indifference claim, a plaintiff must prove that: (1) he suffered from an objectively serious medical condition; and (2) the individual defendant was deliberately, that is subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) cert denied, ---U.S.----, 140 S. Ct. 50, 205 L. Ed. 2d 38 (2019). A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a lay person." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It "need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019) (cleaned up).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of the risk to the inmate's health, and then the official must disregard that risk. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). In other words, the prison official must have acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). A plaintiff may establish deliberate indifference by showing that the defendant "knew of a substantial risk of

harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d. 645, 653 (7th Cir. 2005). "The standard is a subjective one: the defendant must know facts from which [s]he could infer that a substantial risk of serious harm exists, and [s]he must actually draw that inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

"When a prison medical professional is accused of providing *inadequate* treatment (in contrast to no treatment), evaluating the subjective state-of-mind element can be difficult." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (emphasis in original). Evidence of medical negligence is not enough to prove deliberate indifference. *Estelle,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). However, a doctor who provides some treatment may still be held liable if [s]he possessed a sufficiently culpable mental state. *Zaya*, 836 F.3d at 805 (citing *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)).

The Seventh Circuit has emphasized the deference owed to the professional judgment of medical personnel. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); *see also Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (describing the standard for "professional judgment"). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference . . . A [medical professional] who claims to have exercised professional judgment is effectively asserting that [s]he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the [medical professional] in entitled to summary judgment." *Zaya*, 836 F.3d at 805. But deference does not mean that a defendant

14

automatically escapes liability when the defendant invokes professional judgment as a basis for a treatment decision. *Id.* Where evidence exists that the medical professional "knew better than to make the medical decision that [s]he did," then summary judgment is improper. *Whiting*, 839 F.3d at 664 (citing *Petties*, 836 F.3d at 730–31).

Dr. Obaisi does not argue that Matthews' toenail infection was not an objectively serious medical condition. *See* Memo. SJ. Accordingly, the Court turns to whether Dr. Obaisi had the requisite state of mind necessary to establish a claim for deliberate indifference to medical need. To do so, the Court first must address when Dr. Obaisi first became aware of Matthews' toenail infection.

## I.    Dr. Obaisi's Knowledge of Matthews' Toenail Infection

Dr. Obaisi argues that, because the first medical record documenting that Matthews informed Dr. Obaisi about his toe infection was on September 15, 2015, he did not know about it before then. Memo. SJ at 8–9. However, this ignores Matthews' testimony that, starting in June 2015, he repeatedly informed Dr. Obaisi of his painful and worsening fungal infection, and showed Dr. Obaisi his infected foot. Resp. at 15. As Matthews points out in response, the Seventh Circuit in *Thomas v. Martija* found that Dr. Obaisi's failure to record a patient's complaint in his own notes did not preclude a reasonable jury from concluding that Dr. Obaisi knew about a medical condition. *Id.* (citing 991 F.3d 763, 769 (7th Cir. 2021)); *see also Snow*, 2021 WL 4439421, at *10 ("It is well-established that a plaintiff's 'first-hand account' of a conversation 'is competent evidence,' even if a trier of fact could reasonably infer from

the 'lack of mention' in a record of a note 'that the issue was not raised.'") (quoting *Thomas*, 991 F.3d at 769). Matthews' testimony that he informed Dr. Obaisi about his infected foot and showed his infected foot to Dr. Obaisi beginning in June 2015 is enough to create a question of fact as to when Dr. Obaisi became aware of Matthews' fungal infection.[13]

## II.    Matthews' Harm Resulting from the Delay/Treatment Decision

Matthews contends that Dr. Obaisi was deliberately indifferent to his serious medical need because (1) Dr. Obaisi's delay in treating his infection unnecessarily prolonged his pain, (2) Dr. Obaisi's delay in treatment caused the fungal infection to progress to the point where removal of Matthews' toenails—as opposed to a less invasive treatment—was required, and (3) Dr. Obaisi's decision to remove Matthews' toenails—as opposed to a less invasive treatment—on its own was contrary to the appropriate standard of care. Resp. at 16–18. The Court addresses each of these arguments in turn.

### A.  Pain Caused by Delay in Treatment

Matthews testified that his fungal infection worsened over time, causing him increasing pain. Resp. at 17. Dr. Obaisi argues that Matthews has not presented verifying medical evidence that any delay in treatment of Matthews' fungal infection

---

[13]Matthews also contends that Dr. Obaisi should have been aware of the notes of other medical professionals that Matthews informed about his foot infection. Resp. at 16. However, he points to no evidence in the record that Dr. Obaisi was actually aware of those medical records, nor does he cite to any authority supporting the proposition that a prison medical director should be aware of all other prison medical or mental health officials' notes about a patient. No matter, because the Court finds that Matthews' testimony and declaration create a question of fact as to when Dr. Obaisi was aware of Matthews' fungal infection.

had a detrimental effect. Memo. SJ at 10–14. In cases like this—where the plaintiff alleges the defendants delayed, rather than denied, medical treatment—the Seventh Circuit has required that the plaintiff "present verifying medical evidence" that the delay, and not the underlying condition, caused some harm. *Walker*, 940 F.3d at 964 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). "Clearly, expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement. On the other hand, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient *if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him*." *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (emphasis in original) (cleaned up).

As it did in its decision on McCastland's summary judgment motion, the Court again finds *Grieveson*, cited by both parties, instructive. In *Grieveson*, the plaintiff did not introduce expert testimony that his medical condition worsened because of a delay in treatment, but rather "supplied medical records indicating that he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist. [The plaintiff] later underwent painful nose surgery." 538 F.3d at 779. The Seventh Circuit found that the evidence produced by the plaintiff "could certainly help a jury determine whether the delay unnecessarily prolonged and exacerbated [the plaintiff's] pain, and thus qualifie[d] as verifying medical evidence that supports a genuine issue of material fact regarding the seriousness of [the plaintiff's] medical condition." *Id*. He also provided evidence that the defendant-officers knew that he was in pain but did not secure medical treatment for him for at

least one-and-a-half days until after they knew about the injury. *Id.* The Seventh Circuit found that the plaintiff's claim for deliberate indifference to medical needs survived summary judgment. *Id.* at 780. In so holding, the Seventh Circuit relied on *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007), which Dr. Obaisi also cites, Memo. SJ at 13.

The Court also finds *Williams* instructive again. In that case, the plaintiff-inmate presented non-medical record evidence that he woke up around 6:30 a.m. on the day in question experiencing chest pain, numbness in his arm, dizziness, nausea, and vomiting. 491 F.3d at 716. The plaintiff complained multiple times about his symptoms and pain to three different correctional officers, all of whom refused his requests for medical treatment. *Id.* at 712–13. Around 1:00 p.m., the plaintiff was carrying a heavy box containing his belongings up a flight of stairs when he blacked out and fell backwards down the stairs, at which time medical technicians responded and sent him to the prison emergency room. *Id.* at 713. In the emergency room, the plaintiff received medication that quickly relieved his pain. *Id.* He rated his pain an 8/10 and had high blood pressure, an elevated pulse, and an abnormal heart rate. *Id.* Although his blood pressure decreased after about an hour, the plaintiff remained in the infirmary for six days. *Id.* The plaintiff alleged that the delay in treatment violated his Eighth Amendment rights. *Id.* at 714.

The parties disputed whether the plaintiff had offered sufficient verifying medical evidence. *Williams*, 491 F.3d at 715. The defendants' medical expert "testified that any delay in treatment [did not] appear to have had any significant

18

adverse effect" on [the plaintiff's] condition." *Id.* at 714 (cleaned up). The plaintiff did not present expert testimony, but rather relied on the medical records from when he arrived at the hospital, which showed that he "had elevated blood pressure, had an abnormal EKG, was sweating, and complained of severe pain. The medical records also showed that with treatment, [the plaintiff's] symptoms, including his pain and high blood pressure, quickly subsided." *Id.* at 715. The Seventh Circuit found that, "[a]lthough no jury could determine, based on this record, whether it was the delay in care or the underlying condition that necessitated [the plaintiff's] treatment or affected his ability to work, a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated [his] pain and unnecessarily prolonged his high blood pressure." *Id.* at 715–16. It therefore rejected the defendants' argument that plaintiff had presented insufficient verifying medical evidence and affirmed the district court's denial of judgment as a matter of law. *Id.* at 716.

As in both *Grieveson* and *Williams*, here Matthews has not provided expert testimony that the delay in treatment of his infected feet harmed him. But Matthews has presented evidence that he informed Dr. Obaisi of his infected feet as of June 2015 and there are medical records dated August 2, 2015, August 17, 2015, and September 11, 2015 documenting that Matthews reported a painful foot infection to other medical or mental health professionals (and informed one of them that he was losing toenails). PSOAF ¶¶ 8–9 (citing R 290-1, Medical Records at PageID 8985–86); Def.'s Resp. PSOAF ¶¶ 12–13 (citing Medical Records at PageID 8992; R. 288-2,

Mental Health Records at PageID 9020)). True, the nurse wrote on August 2, 2015 that Matthews did "not appear to be in pain or distress," but at this stage, the Court must view the evidence in the light most favorable to Matthews, and Dr. Obaisi has cited no authority that a patient's reported pain documented in a medical record does not constitute verifying medical evidence. It is undisputed that on September 15, 2015, Dr. Obaisi diagnosed Matthews with onychomycosis and scheduled him to have some toenails removed the following week, which Dr. Obaisi did on September 23, 2015. DSOF ¶¶ 45–48 (citing Medical Records (Def.) at PageID 1690–91).

As in *Williams*, the only expert testimony on the issue is from the defense expert, here, Dr. Golden,[14] who opined that "Matthews was never at severe risk of harm from delay or non-treatment of a fungal infection." R. 247-4, Def. Exh. 5, Golden Report at 4; *Williams*, 491 F.3d at 715 ("The only testimony from a medical expert, Dr. Doughty, was that the delay did not appear to have adversely affected [the plaintiff's] condition."). However, according to Matthews, he told Dr. Obaisi multiple times between June and September 2015 that he had an infection on his feet and toes, and that he showed Dr. Obaisi his feet, which were rotting and had open sores. PSOAF ¶ 2; Matthews Dep. at 16:21–18:15; Matthews Decl. ¶¶ 27–30. Dr. Obaisi, however, did not provide any treatment until September 2015. *Id.*

Matthews cites to the Seventh Circuit's decision in *Thomas* in which the Seventh Circuit found that "failing to provide a very easy treatment or

---

[14]Dr. Golden is a board-certified internal medicine physician and assistant professor of clinical medicine at Northwestern's Feinberg School of Medicine. R. 247-4, Def. Exh. 5, Golden Report at 1–2.

accommodation can [constitute delay reflecting deliberate indifference], if unnecessary suffering resulted." 991 F.3d at 769. In *Thomas*, the Seventh Circuit found that Dr. Obaisi's failure to grant a low bunk permit created a question of fact as to his deliberate indifference because he prolonged the plaintiff's pain by forcing him to use a broken hand to climb to an upper bunk. 991 F.3d at 769–70. Similarly, it found that Dr. Obaisi's delay in referring plaintiff to an orthopedist specialist prolonged his pain while he was waiting for the orthopedist's treatment plan. *Id.* at 771. Here, Matthews points to Dr. Golden's testimony that oral or topical antifungal treatments are frequently used in treating fungal infections, as well as keeping the area dry and in clean cotton socks, which Matthews contends are all "easy treatment[s]." Resp. at 17–18; Def.'s Resp. PSOAF ¶ 16.

Although a close call, the Court finds that Matthews has presented sufficient verifying medical evidence to support a finding that the delay in treatment unnecessarily prolonged Matthews' pain, given his reported symptoms and onychomycosis diagnosis, which, as indicated above, Dr. Obaisi does not argue is not a serious medical condition. *See Williams*, 491 F.3d at 715–16 (although a jury could not determine from the records whether a delay in care of the plaintiff's underlying condition necessitated his treatment, "a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated [the plaintiff's] pain and unnecessarily prolonged his high blood pressure"); *Lewis v. McLea*n, 864 F.3d 556, 563 (7th Cir. 2017) ("'A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily

prolonged his pain,' and 'even brief, unexplained delays in treatment may constitute deliberate indifference.'") (quoting *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015) (emphasis in original)).

## B. Removal of Toenails

The Court next turns to Matthews' arguments related to Dr. Obaisi's decision to remove his infected toenails rather than treat the infection with a less invasive and less painful method. Resp. at 15–18. Specifically, Matthews posits that Dr. Obaisi could have employed a less invasive method had he not delayed in treating Matthews' infection, or alternatively, that Dr. Obaisi "unreasonably refused a standard treatment option for onychomycosis" unrelated to any delay in treatment. *Id.* at 17. The Court agrees with Dr. Obaisi that Matthews has not presented sufficient evidence supporting a deliberate indifference claim based on Dr. Obaisi's decision to treat Matthews' foot infection by removing the toenails rather than treating it another way.

### 1. Delay Relating to Removal of Toenails

Starting with Matthews' contention that the delay in treatment resulted in Dr. Obaisi's decision to remove his toenails to treat the infection, it bears repeating that "evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." *Williams*, 491 F.3d at 715. Here, although the evidence of Matthews' diagnosis and treatment creates a question of fact as to whether the delay in treatment unnecessarily prolonged his pain, it does not assist

the jury in determining whether the delay necessitated Dr. Obaisi's treatment decision. And the Court agrees with Dr. Obaisi that Dr. Golden's testimony, which Matthews relies on, does not support Matthews' position that "intervention in the early stages of the fungal infection could have resulted in a better outcome." Reply at 8 (citing Resp. at 17 (citing PSAOF ¶ 16)). Dr. Golden testified that it is possible that a *three-year* delay in treating a fungal toenail infection may have "played a role in the loss of Mr. Matthews' toenails" but a delay of several months—as occurred here—was unlikely to have made a difference. *Id.* at 6 (citing Golden Dep. at 40:21–41:41). And, although Dr. Golden testified about alternative treatment options like oral or topical antifungal treatments, he did not opine that the use of those options would have precluded removal of Matthews' toenails, as Matthews suggests. To the contrary, Dr. Golden opined that "onychomycosis that is severe enough to require removal of a toenail usually takes years to develop," Reply at 6 (quoting R. 247-4, Golden Report at 5), so when asked during his deposition whether taking oral and antifungal treatments in conjunction with wearing clean dry socks could have saved Matthews' toenail, he could not answer, because "these types of infections can be present for a long time," Golden Dep. at 65:23–66:13.

In *Thomas*, cited by Matthews and discussed above, the Seventh Circuit found that the medical reports from the plaintiff's visit with the orthopedist, which reported diminished sensation in the plaintiff's fingers and healing abnormalities, could allow a reasonable jury to conclude that the delay in adequately treating Thomas's hand injury led to nerve damage and improper healing. 991 F.3d at 771. Neither party

presented expert testimony regarding the nerve damage and improper healing in *Thomas*. Here, to the contrary, Dr. Obaisi has presented Dr. Golden's expert testimony that a fungal infection of the toes usually develops over years, meaning treating it several months earlier would not make a substantial difference. So, the Court cannot conclude that the medical records reflecting that Dr. Obaisi removed Matthews' toenails, on their own, could lead a reasonable jury to conclude that the delay in any kind of treatment caused Dr. Obaisi to have to remove Matthews' toenails.

Matthews attacks Dr. Golden's opinions, pointing out that Dr. Obaisi does not appear to have cultured or otherwise tested Matthews' toenails to determine what kind of infection Matthews suffered from, so "Dr. Golden's assessment is an after-the-fact attempt to attribute the infection to onychomycosis, without any scientific basis." Resp. at 16. As stated above, however, Dr. Obaisi's September 23, 2015 Medical Progress Note states that Matthews was "seen for severe onychomycosis." Medical Records (Def.) at PageID 1691. Moreover, asserts Matthews, "Dr. Golden's testimony also shows that he did not consider the fact that Matthews' infection resulted from standing in sewage or the difference in onset of serious infection based on various infective sources." *Id.* Therefore, argues Matthews, Dr. Golden's report should be subject to cross-examination, not resolved on summary judgment. *Id.* Matthews did not file a *Daubert*[15] motion to exclude any of Dr. Golden's opinions, however. While a

---

[15]Typically, a motion to bar expert testimony in federal court is made pursuant to the seminal United States Supreme Court case of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

separate *Daubert* motion may not be required to bar certain expert opinions, the Court nonetheless finds Matthews' arguments regarding the reliability of Dr. Golden's opinions and/or methodology to be underdeveloped, and accordingly, waived. *See Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up). Nor did Matthews present his own expert to opine on the alleged deficiencies in Dr. Golden's report, which would have created a classic "battle of the experts," rendering summary judgment inappropriate. *See, e.g.*, *Heth v. Fatoki*, 2023 WL 6213712, at \*5 (N.D. Ill. Sept. 25, 2023) (quoting *Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009)).

Based on the materials before it, the Court agrees with Dr. Obaisi that Matthews has failed to present verifying medical evidence to rebut Dr. Golden's opinions, and therefore has not shown that a question of fact remains that the need to remove his toenails was caused by any delay to treat the infection.

### 2. Decision to Remove Toenails

Finally, the Court addresses Matthews' contention that Dr. Obaisi's decision to remove his toenails rather than pursue other less invasive treatment options amounted to deliberate indifference. To sustain a deliberate indifference claim based on a physician's treatment decision, the decision must be "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Whiting*, 839 F.3d at 664 (cleaned up). Medical professionals are "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances at issue." *McGee v.*

*Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Here, Dr. Obaisi has presented Dr. Golden's expert opinion that a severe fungal infection can require removal of the toenails. DSOF ¶ 64. Dr. Golden also opined about the shortcomings of other treatment options, including that topical treatments can take up to a year of regular use, and even then, the cure rate is low and the recurrence rate is high and that oral medications, while more effective, increase the risk of dangerous interactions with other medications the patient may be taking. *Id.* ¶ 62. Matthews cites no authority supporting a finding of deliberate indifference when a doctor decides to treat a condition with an effective but invasive method, as opposed to less invasive methods. Based on the record and authority before it, the Court cannot say that Dr. Obaisi's decision to remove Matthews' toenails to treat the fungal infection was "so far afield of accepted professional standards" that it constitutes deliberate indifference.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Dr. Obaisi's summary judgment motion [243]. The Court denies the motion as it relates to Matthews' deliberate indifference to medical care claim based on the prolonged pain Matthews experienced due to Dr. Obaisi's delay in treating his fungal infection. It is granted as it relates to Matthews' deliberate indifference claim based on Dr. Obaisi's decision to remove Matthews' toenails (whether caused by a delay in

26

treatment or not). The Court will rule on the remaining pending summary judgment motions via separate orders.

Dated: June 10, 2024

United States District Judge
Franklin U. Valderrama